THE STATE ex rel. A. M. CONWAY, Appellant, v. F. B. HILLER et al., Constituting State Board of Health.

Division One, December 8, 1915.

1. **APPELLATE JURISDICTION: State Board of Health a Party.** The jurisdiction of the members of the State Board of Health is coextensive with the State, and hence they are classed as State officers; and an appeal from the judgment of a circuit court quashing a writ of *certiorari* issued against the members of said board on behalf of a physician whose license to practice medicine had been revoked by them, is to the Supreme Court.

2. **CONSTITUTIONAL QUESTION: Raised in Motion for New Trial: No Bill of Exceptions.** An attack upon the validity of a certain statute, made for the first time in the motion for a new trial, if the abstract contains no part of the bill of exceptions, cannot be considered on appeal. A motion for a new trial is not a part of the record proper, but a part of the bill of exceptions, wherein must be preserved an exception to the overruling of the motion; and if the abstract contains no bill of exceptions, any assignment made in the motion for a new trial alone cannot be considered on appeal, although that motion is printed in the abstract as a part of the record proper.

3. **STATE BOARD OF HEALTH: Review of Action: No Bill of Exceptions.** Notwithstanding the fact that appellant's abstract does not contain a bill of exceptions and the validity of the statute under which his license to practice medicine was revoked, raised for the first time in the motion for a new trial filed in the circuit court, cannot be considered on appeal, the duty still remains on the court to determine the legality of such revocation upon the record before the State Board of Health, and certified upon writ of *certiorari* to the circuit court.

4. ———: **Review of Evidence: Certiorari.** As a general rule the writ of *certiorari* brings up only the record proper of the tribunal to which it is addressed, and does not bring up the evidence; but in a case in which the State Board of Health has revoked the license of a physician, he may have the proceedings of said board reviewed under the provisions of section 8317, Revised Statutes 1909.

5. ———: ———: ———: **Questions for Review.** Where the
evidence and record before the State Board of Health have
upon *certiorari* been certified to the circuit court, and the
decision of the board sustained and the writ of *certiorari*
quashed, two propositions are presented for determination on
the record made before the board: (a) Does the complaint
filed before the board state a good cause of action for revoking
relator's license by the board under the statute (Sec. 8317,
R. S. 1909); and (b), Was the evidence adduced before the board
sufficient to sustain the charges contained in the complaint and
to warrant the board in revoking relator's license and in in-
flicting the penalty entered?

6. **PHYSICIAN: Grounds for Revoking License: Dishonorable
Conduct.** Allegations in the complaint and proof showing that
defendant, in a local option town and county, in the course of
six weeks filled out 778 blank prescriptions for whiskey alone,
to be used as a beverage, by inserting in each of them the name
of the purchaser, signing his own name thereto as a physician,
and charging and receiving therefor twenty-five cents for each
prescription so made out and signed, establish the charge of
"guilty of unprofessional and dishonorable conduct," since every
such prescription constituted a crime against the State, and
authorized the State Board of Health to revoke, for a period
of ten years, his license, or other right to practice medicine,
however derived.

Appeal from Cole Circuit Court.—*Hon. John M.
Williams,* Judge.

AFFIRMED.

*Sebastian & Sebastian* for appellant.

(1)   The license of a practicing physician is a
valuable privilege and property right, which can only
be revoked by due process of law.   State ex rel. v.
McElhanney, 246 Mo. 606.   (2)   The State Board of
Health can only revoke a physician's license, for un-
professional and dishonorable conduct, when the act
specified comes clearly within the definition of Sec.
8317, R. S. 1909.   State ex rel. v. Robinson, 253 Mo.
287.   (3)   This statute is highly penal and must be
strictly construed.   A physician cannot be held to have

violated its provisions unless his acts come within the letter and the spirit of the law. Bishop on Written Law, secs. 189 and 194; State v. Balch, 178 Mo. 392; State v. McMahan, 234 Mo. 614. (4) Where a statute specifically names several matters or things which shall be governed by its provisions, and then by general language undertakes to include other acts and things, not specifically named, it must be construed as to apply only to the things or acts of the same general nature as those set out. St. Louis v. Kaine, 180 Mo. 309; State ex rel. v. Berryman, 142 Mo. App. 373; State ex rel. v. Robinson, 253 Mo. 287. (5) The Constitution of this State vests the power to make law in the General Assembly. Article 16, section 1, and article 3 prohibit executive officers from performing legislative functions. The maxim, *Delegata potestas non potest delegare,* is fully expressed in these provisions of the Constitution. Cooley on Constitutional Law (5 Ed.), p. 139. (6) The writing of prescriptions for whiskey is not one of the acts designated by the statute as unprofessional or dishonorable conduct, nor is it one of the same general nature as the things definitely set out. State ex rel. v. Robinson, 253 Mo. 271; 30 Cyc. 1555. (7) If it could be contended that the State Board of Health could make the writing of prescriptions for whiskey unprofessional or dishonorable conduct, then there is nothing in the record of this case to show that they had ever undertaken to do so. The rule is, in such cases, that the complaint must allege and prove that the offense which is the basis of the complaint is one which is violative of the statute. The revocation of relator's license to practice medicine was without authority or sanction of law. Board v. Eisen, 123 Pac. 52; McCommer v. Board of Health, 8 L. R. A. (N. S.) 58; State ex rel. v. Kellogg, 36 Pac. (Mont.) 957.

*John T. Barker,* Attorney-General, and *W. T. Rutherford,* Assistant Attorney-General, for respondents.

(1) A constitutional question must be raised at the first opportunity, else it is waived. The first opportunity in this case was in relator's application for the writ. Raising the question for the first time in the motion for a new trial was too late. Sheets v. Insurance Co., 226 Mo. 617; Hartzler v. Street Ry. Co., 218 Mo. 564; Lohmeyer v. Cordage Co.; 214 Mo. 687. (2) The party asserting the unconstitutionality of a statute must point out the specific provision of the Constitution violated. Lohmeyer v. Cordage Co., 214 Mo. 688; Excelsior Springs v. Ettenson, 188 Mo. 129; Davis v. Thompson, 209 Mo. 196; Independence v. Knoeper, 205 Mo. 342. (3) Section 8317, R. S. 1909, includes acts other than those specifically named, as unprofessional or dishonorable conduct. People v. Apfelbaum, 251 Ill. 22; Berry v. State, 135 S. W. 1; Morse v. State Board of Med. Ex., 122 S. W. 446; Meffert v. Packer, 1 L. R. A. (N. S.) 814; Meffert v. Packer, 195 U. S. 625; State ex rel. v. Goodier, 195 Mo. 556; Spurgeon v. Rhodes, 167 Ind. 11; Wolf v. State Board Med Ex., 109 Minn. 360; State v. Board, 34 Minn. 387; State v. Board, 32 Minn. 324; State Board v. McCoy, 125 Ill. 289; State Board v. Roy, 48 Atl. 802; In re Newell Smith, 10 Wend. 449; State ex rel. v. Hathaway, 103 Mo. 29. (4) Section 8317 is not unconstitutional because it authorizes the State Board of Health to revoke a license to practice medicine for unprofessional or dishonorable conduct. People v. Apfelbaum, 251 Ill. 22; Berry v. State, 135 S. W. 1; Oil Co. v. State, 48 Tex. Civ. App. 179; Morse v. State Board of Health, 122 S. W. (Tex.) 448. (5) A license to practice a profession is not a contract. State v. Gazlay, 5 Ohio, 22; Cohen v. Wright, 22 Cal. 317; Ex parte Yale, 24

Cal. 242; Lanquille v. State, 4 Tex. App. 320; Simmons v. State, 12 Mo. 279; State ex rel. v. McIntosh, 205 Mo. 636; State ex rel. v. Gregory, 83 Mo. 123; State v. Hathaway, 115 Mo. 36; State v. Davis, 194 Mo. 501; State ex rel. v. Goodier, 195 Mo. 551; State v. Doerring, 194 Mo. 398. (6) The Board of Health may revoke a license for the same causes for which it may refuse to issue it. Sec. 8317, R. S. 1909; State ex rel. v. Goodier, 195 Mo. 560; Meffert v. State Board of Med. Ex., 1 L. R. A. (N. S.) 816, 195 U. S. 625; People v. Apfelbaum, 251 Ill. 25. (7) The granting or refusing to grant a license to practice medicine, or the revocation thereof by the board, is not the exercise of judicial power. Spurgeon v. Rhodes, 167 Ind. 12; State ex rel. v. Goodier, 195 Mo. 560. (8) The findings of a medical board in a proceeding to revoke a physician's license are conclusive upon the courts. 3 Cyc. 1557; Meffert v. State Board of Med. Ex., 1 L. R. A. (N. S.) 816, 195 U. S. 625; Munk v. Frink, 116 N. W. 528; Walker v. McMahan, 116 N. W. 528. (9) The practice in revocation proceedings before a medical board is more flexible than that allowable in the courts, and any evidence which tends to prove or disprove the point in issue may be introduced, although not the best evidence which might be had. 30 Cyc. 1557; Traer v. State Board Med. Ex., 106 Iowa, 559. (10) The doctrine of *ejusdem generis* is only a rule of construction to be applied as an aid in ascertaining the legislative intent, and does not control where it clearly appears from the statute as a whole that no such limitation was intended. 36 Cyc. 1120; State v. Smith, 233 Mo. 257; Henderson v. Railroad, 81 Mo. 607; 2 Lewis's Sutherland on Stat. Const. (2 Ed.), secs. 363, 364, 437; Grimes v. Reynolds, 184 Mo. 698. Of the legislative intent: Darlington L. Co. v. Railroad, 216 Mo. 671; Clark v. Railroad, 219 Mo. 524; Glaser v. Rothschild, 221 Mo. 180; Scott v. Royston,

223 Mo. 631; Fruin v. Meredith, 145 Mo. App. 586; Hicks v. McCown, 144 Mo. App. 544; Granitoid Co. v. George, 150 Mo. App. 650; Louisiana Pur. Ex. v. Schnurmacher, 151 Mo. App. 601; Hawkins v. Smith, 242 Mo. 688; Spicer v. Spicer, 155 S. W. 382; Blanchard Co. v. Hamblin, 162 Mo. App. 242; Christie L. & P. Co. v. Hamblin, 144 S. W. 882; State ex rel. v. Seehorn, 246 Mo. 568; State ex inf. v. Amick, 247 Mo. 271; Pub. Co. v. McNichols, 153 S. W. 562; Rodgers v. Nat. Council, 155 S. W. 875; State ex inf. v. Railroad, 238 Mo. 605; State v. Robinson, 163 Mo. App. 221; Herberg v. Railroad, 164 Mo. App. 514; Gantt v. Brown, 238 Mo. 560; State v. Schenk, 238 Mo. 429; Moon v. Western U. Tel. Co., 164 Mo. App. 175; Shohoney v. Railroad, 231 Mo. 157; State ex inf. v. Oil Co., 218 Mo. 354. Of the doctrine of *ejusdem generis*: Ex parte Smith, 231 Mo. 119; State v. Eckhart, 232 Mo. 52; Warner v. Cartersville, 142 Mo. App. 127; State v. Smith, 233 Mo. 257; State ex rel. v. Harter, 188 Mo. 528. (11) A license to practice medicine may be revoked for acts that were not grounds for revocation at the time they were committed, but were afterwards made so by statute. Meffert v. State B. of Ex., 1 L. R. A. (N. S.) 818, 195 U. S. 625; State Board of Health v. Roy, 22 R. I. 538; State v Schaffer, 129 Wis. 465. (12) The portion of the statute making unprofessional or dishonorable conduct a ground of revocation of a license to practice medicine is reasonable, definite and certain. People v. State Bd. Health, 125 Ill. 289; State ex rel. v. State Med. Ex., 34 Minn. 391; State ex rel. v. Goodier, 195 Mo. 551; State v. Med. Ex. Bd., 32 Minn. 324; Aiton v. Medical Ex., 13 Ariz. 358; Wert v. Clutter, 37 Ohio St. 350; Forman v. Board of Health, 162 S. W. (Ky.) 798; Richards v. Simpson, 47 L. R. A. (N. S.) 915; People ex rel. v. Reid, 136 N. Y. S. 430; State ex rel. v. Board of Health, 103 Mo. 283; Meffert v. State Bd. Med. Ex., 1 L. R. A. (N. S.) 811, 195 U.

S. 625; People v. Apfelbaum, 251 Ill. 22; Berry v. State, 135 S. W. 631; Morse v. Board Med. Ex., 122 S. W. 448; Spurgeon v. Rhodes, 167 Ind. 11; Wolf v. Board Med. Ex., 109 Minn. 360; State v. St. Ry. Co., 146 Mo. 167; Kennedy v. Board of Reg. Med., 108 N. W. 730.

RAILEY, C.—Appellant Conway filed in this court an abstract of record, and the Attorney-General has filed a counter-abstract of record. It appears from appellant's abstract that on April 27, 1910, Emmett McDonnell and two other citizens of Boone county, Missouri, filed complaint before the State Board of Health against said Conway, who was a physician, authorized to practice medicine in said county, charging him with *unprofessional* and *dishonorable conduct.* The petition to said board specified the grounds on which they sought to have the license of said Conway revoked and will be referred to hereafter. A copy of this complaint was served on Dr. Conway and a hearing was had before the State Board of Health in Jefferson City, Missouri, on May 24, 1910. Dr. Conway appeared before the aforesaid board and objected to the hearing for the alleged reason that said board of health was without authority or jurisdiction to hear or determine the charges made against him.

A number of witnesses were introduced by the complainants and examined on the part of the prosecution. Their evidence tended to sustain the specifications that Dr. Conway had written a large number of *whiskey* prescriptions which called for no other ingredients than whiskey, and which were used as a beverage instead of medicine. He had charged twenty-five cents apiece for each prescription. No evidence was offered in behalf of Dr. Conway, and said board, after the hearing aforesaid, annulled and held for naught, for a period of ten years, Dr. Conway's right,

permit and license to practice medicine in the State of Missouri.

At the July term, 1910, Dr. Conway, as relator, filed in the circuit court of Cole County, Missouri, a petition for a writ of *certiorari*, against the members of the State Board of Health, and set out in said petition the original complaint and all other proceedings alleged to have taken place before said board, leading up to his conviction on the 27th of July, 1910.

A writ of *certiorari* was issued by the Cole Circuit Court, directed to the members of the State Board of Health, commanding them to have before the circuit court of said county, on the 3rd of August, 1910, the complaint and charges in the matter aforesaid, together with all the records and proceedings of said board, and a complete transcript of all the evidence pertaining to the revocation of said Conway's license to practice medicine in Missouri, etc. This writ was duly served upon the members of said board, and they accordingly made return to said circuit court of all their proceedings, including petition, all papers filed with them, and all the evidence taken by them, together with their findings and orders. Thereupon, the Attorney-General filed a motion in the circuit court to quash the writ of *certiorari*, for the reasons alleged therein. Said motion to quash was sustained by the circuit court, and the finding of the State Board of Health in revoking the license of Dr. Conway to practice medicine and surgery in the State of Missouri was sustained. The writ of *certiorari* was dismissed and for naught held. A general judgment was rendered in favor of the State Board of Health and all costs incurred in said proceeding taxed against relator Conway.

On the same day of rendition of judgment, appellant's abstract recites that he filed a motion for a new trial, and that the same was overruled. It likewise re-

cites that an affidavit for appeal was filed and an appeal granted relator to the Supreme Court of Missouri. It also recites that the court granted relator leave to prepare and file his bill of exceptions before or during the first day of the July term. Said abstract contains the following:

"Within the time allowed by the court, relator presented his bill of exceptions, which was duly signed, sealed, and by order of record, filed in this case and made a part of the record thereof."

No bill of exceptions is set out in the record, nor is there anything contained therein, which indicates that any of the other printed matters, in the abstract of record, *were incorporated in or made a part of said bill of exceptions.* None of the proceedings or evidence set out anywhere in the record is said to be contained in said bill of exceptions. There is nothing in the abstract of record indicating that any matters of *exception* are contained in the bill of exceptions. The record *proper* purports to contain the motion for a new trial, and an alleged exception to the overruling of same, but none of these matters appear in the alleged bill of exceptions. The abstract filed by appellant sets out an incomplete synopsis of the testimony heard by said board, but no part of same appears in the bill of exceptions, nor is it called for therein.

The counter-abstract of respondents contains substantially the testimony as given before the board, and said testimony sustains, in the main, the charges and specifications contained in the complaint before said board.

We here state a brief synopsis of the specifications contained in said complaint:

Said McDonnell, Stevens and Goldsberry, citizens of Columbia, Missouri, charged, that one A. M. Conway had been for many years a practicing physician, located in Columbia, Missouri, and that he be-

came a registered physician on the 17th day of August, 1874, under the Acts of said year at page 111; that on said date, he registered as such physician, with the clerk of the county court of Boone county, Missouri. For their complaint, they charge, that said Conway was then, and for a long time past had been, guilty of *unprofessional* and *dishonorable conduct* in the following particulars, to-wit:

1. That soon after the adoption of the, Local Option Law in the city of Columbia, Missouri, which occurred on the 5th day of February, 1908, the defendant secured an office in the Orear Building in said city; that prior to said time the defendant had no practice and had been making his living by peddling teas, coffees and spices; that within a very short time after opening an office as aforesaid, the stairway and hall of said building was frequented by negroes, inebriates, loafers, objectionable and offensive persons going to and from defendant's office in quest of and obtaining perscriptions for whiskey; that his office was more or less crowded with such applicants for whiskey prescriptions at all hours of the day and until late at night, and at times on Sunday; that by reason of the noise and offensiveness of the aforesaid conditions, other tenants occupying the second and third floors of said building complained to the owner thereof and protested against further occupancy of said building by this defendant and threatened to abandon their leases if defendant was permitted to remain, whereupon the owner terminated defendant's tenancy and procured his removal from said building; that this defendant then obtained permission from the private owner to open an office in the old city police court room in a building until a short time prior thereto occupied by the City of Columbia for police headquarters, jail, and water and light office; that after some time defendant moved his office to the ground floor of

said building in a room located on a side street and abutting on an alley next to a livery stable, a place wholly unfit and unsuited in every respect to a legitimate medical practice and within surroundings exceeding well adapted to writing illegal whiskey prescriptions; that defendant continues now to maintain such office and has no apparent medical practice other than the writing of whiskey prescriptions.

2. That during a portion of the year 1909, the defendant made his home with a relative, one F. M. Lowery, and occupied an upstairs room as a bed chamber; that defendant placed, or had placed, against the side of the house, a ladder extending up to the window of defendant's room; that a great many persons were seen and known to have climbed up said ladder to defendant's window and procured whiskey prescriptions from him; this practice became so annoying to the said F. M. Lowery that he drove defendant from his home.

3. That until recently there has been located in the city of Columbia a drug store known as "The West End Pharmacy;" that said drug store was formerly owned and operated by Oscar Barrett, but that in the month of January, 1910, said Oscar Barrett was prosecuted for violations of the Local Option Law and his store closed by the authorities; that said store was soon thereafter, within a few days, re-opened under the management of one Ollie Tyson, who continued to conduct the business from the 1st day of February, 1910, until the 14th day of March, 1910, when said store was again closed by the authorities for like violations, and the said Ollie Tyson, under an arrangement with the authorities, turned over all prescriptions filled by him in said store from the 1st day of February, 1910, until the 14th day of March, 1910; *that during said month of February, 1910, there were filled at said store, 561 prescriptions, of which number*

544 *were written by the defendant and filled by said
store and were for one pint of whiskey each, without
any other ingredient;* that from the 1st day of March,
1910, to the 14th day of March, 1910, said store filled
242 *prescriptions, of which 234 were written by this
defendant and were for one pint of whiskey each, with-
out any other ingredient;* that while said store was
running unmolested by the authorities the defendant
was known to frequent said store and had made as
many as seven or eight trips a day thereto; that de-
fendant is known, in addition to the business done
through the above named store, to have issued *a large
number of other prescriptions* which were filled at
other drug stores.

4. That on the 26th day of March, 1910, this de-
fendant issued a prescription to a negro, Grant Gil-
more, without having made any examination what-
ever of said negro, said prescription being issued for
one pint. of whiskey to be·used as a beverage, and for
which said negro paid the sum of twenty-five cents;
that on said date last named, the defendant issued for
one William Douglass, also a negro, a prescription for
one pint of· whiskey to be used as a beverage, without
having made any examination of said negro, and for
which prescription said negro paid defendant the sum
of twenty-five cents; that on said occasion there were
so many applicants at defendant's office for prescrip-
tions that they had to line up and wait their turn, there
being as many as seven or eight in line at once; that
defendant almost invariably asked the applicant only
for his name and· gave him the prescription without
any further question or examination; that most of the
applicants for prescriptions were negro laborers, re-
turning from their daily labors with their dinner pails
on their arms and apparently in the best of health; that
this defendant had blocks of prescriptions for one pint
of whiskey already filled in, with the exceptions of his

signature, the date and the name of the party to whom the prescription was to be issued.

5. That this defendant has solicited patronage of the character set forth in this complaint; that he has been known to give numbers of prescriptions to parties, said prescriptions being issued in blank or to fictitious persons, and distributed to divers persons unknown to defendant and not seen or examined by him.

Complainants further state that by the aforesaid acts of the defendant the community has been long suffering; that his conduct is a menace to the morals of our people; that the truth hereof they stand ready to prove. They therefore pray that the license, or other right to practice, however derived, of the said A. M. Conway, be revoked and for naught held.

As heretofore stated, upon the filing of said complaint, appellant Conway was cited before the aforesaid board, and appeared in answer to said citation. The following witnesses were introduced before said board in behalf of the prosecution, to-wit: Emmett McDonnell, L. T. Searcy, J. A. Stewart, Dr. Woodson Moss, Dr. J. E. Thornton, E. G. Davis, Dr. N. D. Robnett, R. M. Wyatt, Jesse M. Whitesides, Dr. A. E. Kampschmidt and John L. Henry.

It appears from the abstract of record filed herein by the Attorney-General, and which has not been controverted, that Emmett McDonnell testified before said board as follows:

He was acquainted with relator and had known him four or five years; that immediately after local option went into effect in Boone county, relator opened an office in Columbia, Missouri, for the practice of medicine and that prior to that time he had been engaged as an agent selling some kind of groceries for a grocery firm; that he lived in the neighborhood of Dr. Conway and that the latter's reputation for pro-

fessional conduct as a physician was bad; that on the evening of March 26th, previous to the trial, he visited relator's office at two different times.   He saw relator offer a paper to Hopp, and saw that it was a prescription for which relator received fifty cents; that it had relator's name signed to it; that on the same evening he was in Dr. Conway's office and there were about half a dozen negroes lined up, and relator was writing prescriptions for them.   He just asked their names and later on, others came in, to the number of ten, and relator was as busy as he could be.   He never looked up, but would ask, "What is your name?" and they would tell him their names. *He had the prescription already filled out.*   Witness was within three or four feet of relator while he was writing the prescription which had been previously filled out, and he would put their names in the prescription and would sign his name to them; that each of these negroes paid him twenty-five cents for each prescription.   Witness identified 561 prescriptions for whiskey, 544 *of them with relator's signature thereto,* which witness testified was the genuine signature of relator.   Witness also identified 242 other prescriptions marked "Exhibit No. 2" for *whiskey,* and signed by relator, and that the signature thereto was the genuine signature of relator; that one Ollie Tyson conducted a drug store in Columbia, Missouri, during the month of February and the first part of March, 1910, and this drug store had the reputation of being very bad in reference to the selling of intoxicating liquors.

L. T. Searcy, living at Columbia, Missouri, testified that he was prosecuting attorney and had previously been county clerk of Boone county, and assessor for six years; that the reputation of the Tyson Drug Store for illegal sale of whiskey was bad.   He further testified that he was acquainted with the signature of relator, and that the latter wrote 544 of the prescrip-

tions contained in "Exhibit No. 1," which was 561 prescriptions for intoxicating liquors; that these prescriptions were delivered to witness by the proprietor of the Tyson Drug Store when it ceased to operate, and covered a period of February, 1910, and fourteen days in March, 1910. Witness identified the prescriptions contained in "Exhibit No. 2" as having been written by relator and as having his genuine signature thereto, with which he was acquainted, and which exhibit consisted of 242 whiskey prescriptions, 234 of them having been written by relator, and were written between the first of February, 1910, and the 14th of March, 1910, inclusive.

*Exhibits 1 and 2 were introduced in evidence. These exhibits are not set out in either abstract of record, and are not before this court.*

J. A. Stewart, engaged in the real estate business at Columbia, Missouri, testified that he had been presiding judge of the county court for two terms; that he was acquainted with Dr. Conway, and also his signature; that he had examined the prescriptions contained in exhibits 1 and 2, and that they were signed by relator. He further testified that relator's reputation in reference to professional conduct as a physician was bad.

Dr. Woodson Moss testified that he had been a practicing physician at Columbia since June, 1874, and was on the medical staff of the State University; that he had known relator for about forty years; that they were together at the medical school; graduated at the same time; that relator's general reputation at Columbia, in reference to his general conduct as a physician, was bad.

Dr. J. E. Thornton said he had known relator five or six years; that he was acquainted with his general reputation in the community in reference to his general conduct as a physician, and that it was bad.

E. G. Davis testified that he had lived in Columbia for twenty-six years; was in the livery business, and had known relator about a year; that his place of business was located so he could see the people that visited the office of relator; that the majority of the people visiting relator's office were negroes, and that he had seen quite a number come and go out of his office.

Dr. N. D. Robnett testified that he had lived in Columbia, and was engaged in handling vehicles at his place of business near the Tyson Drug Store. The latter, in his opinion, was purely a whiskey drug store; that it was visited by people who were continuously drinking; that he knew relator, and saw him go in and out of the drug store; *that he visited that drug store several times a day.*

R. M. Wyatt testified that he was constable of Columbia township; that he was acquainted with relator and was in the öffice of the latter on the 26th of March, 1910; that when he went in relator's office, two men were standing at the counter. Relator was writing a prescription. After they left, two darkies came up and relator wrote one of them a prescription. After he wrote it, he saw witness standing there, and the latter asked relator if the parties were sick that he wrote the prescription for, and he told witness to attend to his own business and he would attend to his. He said relator never asked any questions of the applicants for the prescriptions while he was there, nor did he make any examinations of said applicants.

Jesse M. Whiteside testified that he was deputy constable of Columbia township, and that he was with witness Wyatt on said occasion. His testimony was substantially the same as Wyatt's.

Dr. A. E. Kampschmidt testified that he lived in Columbia, and had been practicing medicine for about

four years; that he had known relator about three years, and was acquainted with his general reputation in that community in reference to his general conduct as a physician, and that it was bad.

John L. Henry testified that he was clerk of the county court and had been since the 1st of January, 1907; that he was acquainted with O. L. Tyson, who was the proprietor of the drug store in Columbia during the months of February and March, 1910; *that Tyson filed with witness a list of the names of the parties for whom he had filled prescriptions for intoxicating liquor.* Witness identified the prescriptions filed with him in the list marked "Exhibit 1" for the first part of the month of March, 1910, there being 242 prescriptions, and covering a period from the 1st of February to the 14th of March; that he did not have the list filed by Tyson for the month of February, 1910, and that the list had been misplaced. *The prescriptions were introduced in evidence and from the prescriptions themselves it appears that relator, from the 1st day of February, 1910, to the 14th of March, 1910 inclusive, issued 778 prescriptions calling for whiskey.*

It appears from the abstract of record, in behalf of the Attorney-General, that before any testimony was introduced before the State Board of Health relator objected to the introduction of any evidence under the charges preferred, for the reason that he was a practitioner of medicine more than five years before the creation of the State Board of Health, which was created in the session of the Legislature of 1883, and which expressly excepted from its provisions any physician or doctor who had been engaged in the practice of medicine and surgery for a period of five years next before the passage of said act, and that the State Board of Health had no jurisdiction over him. It was admitted that relator was a practicing physician at Columbia, Missouri, at the time the

complaint was filed against him, and that he was duly registered as a physician on the 17th of August, 1874.

With the foregoing evidence before it, the State Board of Health annulled and for naught held, for a period of ten years, Dr. Conway's right, permit and license to practice medicine and surgery in the State of Missouri. Thereupon, relator filed in the circuit court of Cole county aforesaid, his petition for a writ of *certiorari*, and in said petition set out the *complaint* of McDonnell and others to the Board heretofore referred to. He likewise stated the history of the proceedings before said board which culminated in the revocation of his license to practice in said State for the period of ten years. He alleged in said petition that said proceedings were without the course of the common law and that no jurisdiction was obtained over him, as he was a duly registered and practicing physician before the statute creating the State Board of Health was ever passed. He averred that he was duly registered in the office of the county clerk of Boone county, prior to September 1, 1874, and that such registration entitled him to practice medicine and surgery in said State, and that by reason thereof he was excepted from the operation of said statutes creating the State Board of Health, and by subsequent amendments thereto or new sections added, and that all the acts, doings and proceedings of respondents as such Board of Health as to relator are void and of no effect. He averred that relator had a natural and constitutional right, as physician and surgeon, to practice medicine and surgery in said State, and the act of the General Assembly of 1909 deprived or attempted to deprive him of such right and privilege, and that the same was unconstitutional and void as to him. He further averred that said Board of Health had exceeded its jurisdiction, and for that reason its acts, doings and proceedings

are void. He averred that there was no evidence upon which to base such finding and judgment of respondents, and their acts were oppressive and void. It was further averred that none of the charges contained any grounds empowering respondents to revoke relator's right, however acquired, to practice medicine and surgery in this State, and that the acts of such board were void. It is averred that the statute under which respondents proceeded to hear, try and determine said charges was unconstitutional and void as to relator. Said petition then concluded with a prayer asking for the issuance of a writ of *certiorari*, directed to respondents in their official capacity as aforesaid, requiring them, and each of them, to *certify* to said court a full and complete copy of the charges and all other acts and proceedings in the trial of relator upon said charges, as well as the evidence, finding and judgment of said board upon said charge against relator, and directing them to return said copy to said circuit court on or before August 1, 1910, etc.

The writ of *certiorari* was in the usual form, and served upon the members of the Board of Health as heretofore suggested.

The motion to quash said writ filed by the Attorney-General recited that relator's petition did not state facts sufficient to constitute a cause of action against respondents. It also charges that the petition filed by relator does not show that respondents have committed any acts which are not authorized by law, or that they have violated the Constitution or laws of Missouri, but such petition shows that respondents have exercised only such powers as they legally were entitled to exercise under the laws of this State. Said motion further charges that relator's petition shows upon its face, that respondents have not been guilty of any abuse or misuse of their rights and powers granted to them by the State of Missouri. The said motion asked the circuit court aforesaid to dismiss re-

lator's petition for a writ of *certiorari*, and to quash the writ formerly issued by the circuit court at relator's cost.

It appears from relator's abstract that on November 26, 1910, upon the issues joined, before Judge Wm. H. Martin, by agreement of counsel, *all the evidence returned by the respondents in obedience to the writ aforesaid, and all proceedings and orders of the Board of Health returned in obedience to the writ of certiorari, were submitted and considered in evidence in the case.*

Then follows a synopsis of the alleged testimony taken before said board. The testimony set out in relator's abstract of record is incomplete and only partially given, as shown by the abstract filed by the Attorney-General. *This evidence, as well as all the proceedings heretofore mentioned, are not called for in the bill of exceptions or made a part of same so far as this record discloses.*

Relator's abstract states that the case was then taken under advisement until the March term, 1911, and that judgment was entered by the circuit court aforesaid in favor of the State Board of Health. The court sustained the action of respondents in relation to the revocation of the license of said Conway to practice medicine and surgery in the State of Missouri. The court likewise dismissed the writ of error formerly issued and quashed and held the same for naught. Said court adjudged that respondents, constituting the State Board of Health, should go hence without day, and recover from said Conway their costs and charges laid out and expended, and that execution issue therefor.

After this judgment was entered, the abstract of record presented by relator discloses that he filed a motion for a new trial, containing some six grounds, which it is not necessary to set out at present. At the conclusion of this motion, said abstract recites

that it was overruled and to the overruling of same he, at the time, duly excepted and saved his exceptions. *This motion for a new trial and the alleged action of the court thereon, are not shown to be a part of the bill of exceptions, nor is there anything in the record tending to show that either are called for in the said bill. The motion for new trial improperly appears as a part of the record proper in the case.*

An affidavit for appeal was filed, and the appeal allowed to this court. Relator's abstract then recites *that within the time allowed by the court, relator presented his bill of exceptions, which was duly signed, sealed, by order of record, filed in this cause and made a part of the record thereof.*

The foregoing contains a full history of all the proceedings in the cause. No distinction is made between the record proper and matters of exception. In fact, there is nothing in the record tending to show that any of the matters heretofore set out are contained in the bill of exceptions, which it is alleged was signed and filed in the cause. On the record thus made, the questions of law will be presented in the opinion which is to follow.

I. The jurisdiction of respondents as members of the State Board of Health is co-extensive with the boundaries of the State, and hence they are classed as State officers. In view of section twelve of article 6 of our Constitution, the case was properly appealed to the Supreme Court. In State ex rel. v. Higgins, 144 Mo. l. c. 412, the Court in Banc, referring to above section of our Constitution, said:

**Appellate Jurisdiction.**

"A State officer within the meaning of that section is one whose official duties and functions are co-extensive with the boundaries of the State."

In State ex rel. v. Bus, 135 Mo. l. c. 334, the Court in Banc said:

"Thus the Constitution gives the Supreme Court appellate jurisdiction in cases where any 'State officer' is a party [Sec. 12, art. 6, and amendment adopted in 1883.] This court held that the expression 'State officer,' as there used, applied only to such officers as had jurisdiction throughout the State and did not apply to an officer whose jurisdiction was confined to a county, as a sheriff or clerk of a circuit court. [State ex rel. v. Dillon, 90 Mo. 229; State ex rel. v. Spencer, 91 Mo. 206.]"

II. Appellant attacks the validity of section 8317, Revised Statutes 1909, in his brief, for the alleged reason that the General Assembly could not impose upon said State Board of Health the functions which our Constitution devolved upon said Assembly, etc., but in view of the record presented here, we are precluded from reviewing or discussing said constitutional question.

**Constitutionality of Statute: No Bill of Exceptions.**

The only thing to be found in appellant's abstract of record, from cover to cover, relating to a bill of exceptions is the following:

"And thereupon the court granted relator leave to prepare and file his bill of exceptions before or during the first day of the July term, 1911, and granted an appeal of this cause to the Supreme Court of the State of Missouri. And within the time allowed by the court, relator presented his bill of exceptions, which was duly signed, sealed, and by order of record, filed in this case and made a part of the record thereof."

No part of the *alleged* bill of exceptions is set out in the record, nor does it appear that any of the matters contained in said abstract *appear* in the bill of exceptions, or that any of them are *called for* therein. None of the 778 prescriptions calling for whiskey alone, which were signed by relator, filled out and filed between February 1, 1910, and March 14, 1910, have been

set out or preserved in the bill of exceptions, although introduced in evidence by respondents.

The alleged constitutional question supra was raised for the first time in the alleged motion for a new trial, which appears as a part of the record *proper* in said abstract. No motion for a new trial is set out or called for in the *bill of exceptions,* and hence there could be no exceptions saved to the action of the court in overruling same. The alleged bill of exceptions does not *contain* or *call for* the *evidence,* or any of the *records, pleadings or proceedings in said cause.* In short, there is practically no bill of exceptions in the record, and therefore nothing before us for review, but the record proper. [St. Louis v. Young, 248 Mo. 346; St. Louis v. Henning, 235 Mo. l. c. 51; Owens v. Mathews, 226 Mo. 77; Hays v. Foos, 223 Mo. 421; State ex rel. v. Adkins, 221 Mo. l. c. 120; Thompson v. Ruddick, 213 Mo. 561, 564-5; Stark v. Zehnder, 204 Mo. 442; Harding v. Bedoll, 202 Mo. l. c. 630-1; Reno v. Fitz Jarrell, 163 Mo. 411.] There are *many* other cases in the appellate courts of this State to the same effect.

In St. Louis v. Young, 248 Mo. l. c. 347-8, Judge LAMM, in behalf of this division, said:

"The abstract is constructed on a plan steadily condemned by this court as so inherently bad as to be fatally defective, viz., it commingles in an undistinguishable mass matter of exception with record proper and matter contained in record entries, without an earmark to guide us in telling where one begins or the other leaves off. In that fix we cannot know what is in the bill of exceptions. The rule is that since matters of exception must be in the bill of exceptions, the abstract of the bill should show that matters of exception are in the bill. There is only one reference in the abstract to a bill of exceptions and that (at its very close) relates to the filing of one within the leave granted. New rule 31 does not help appellant.

"The judgment below being presumptively correct and finding it responsive to the pleadings, it is affirmed under the authority of many cases. We cite some as samples. From these discern all: Reno v. Fitz Jarrell, 163 Mo. l. c. 413; State v. Baty, 166 Mo. 561; Clay v. Publishing Company, 200 Mo. l. c. 672-3; Stark v. Zehnder, 204 Mo. l. c. 448-9; Gilchrist v. Bryant, 213 Mo. l. c. 443; Harding v. Bedoll, 202 Mo. 625; Kolokas v. Railroad, 223 Mo. 455; Wallace v. Libby, 231 Mo. 341; Keaton v. Weber, 233 Mo. l. c. 694.

"While the point is not raised by counsel yet that is immaterial. This court may raise it *sua sponte.* [Hutson v. Allen, 236 Mo. 645.]"

The other cases cited are fully in line with those quoted from, and clearly hold that on the record presented here, we have no alternative, except to determine the case upon the record proper. The alleged constitutional question is not therefore before the court, and cannot be considered by us.

III. With the constitutional question, attempted to be raised by appellant, eliminated from our consideration, it still remains our duty to determine the case upon the record made before the State Board of Health, and certified to the circuit court of Cole county, Missouri.

Review of Action of State Board of Health.

As a general rule the writ of *certiorari* brings up only the record *proper* of the tribunal to which it is addressed, but does not bring up the evidence (State ex rel. v. Goodrich, 257 Mo. l. c. 48; State ex rel. v. Wiethaupt, 254 Mo. l. c. 329; State ex rel. v. Casey, 210 Mo. l. c. 246; State ex rel. v. St. Louis, 207 Mo. 354; State ex rel. v. Wooten, 139 Mo. App. l. c. 236; State v. Gilbert, 164 Mo. App. l. c. 143); but in cases of this character where the State Board of Health has revoked the license of a physician, he may have the

proceedings of said board reviewed under the provi-
sions of section 8317, Revised Statutes 1909. Said
section reads as follows:

"If the licentiate appear either in person or by
counsel, the board shall proceed with the hearing as
herein provided. The board may receive and consider
depositions and oral statements and shall cause sten-
ographic reports of the oral testimony to be taken and
transcribed, which, together with all other papers per-
taining thereto, shall be preserved for two years. If
a majority of the board are satisfied that the licentiate
is guilty of any of the offenses charged, the license
shall be revoked for such period of time as may be
agreed upon. Any person whose license has been or
shall be revoked by the board shall have the right
to have the proceedings of said board revoking his li-
cense and all the evidence therein reviewed, on a writ
of *certiorari,* by the circuit court of the county in which
said board held its session when said license was re-
voked. Said writ shall issue upon the petition of the
person whose license shall have been revoked to said
court or to the clerk thereof in vacation at any time
within ninety days after such revocation, and shall
command the said board and the secretary thereof to
certify to said court the record and proceedings of
said board, and a complete transcript thereof, and of
all the evidence therein pertaining to the revocation of
said license. The petitioner for the writ of *certiorari*
shall set forth the rights of the petitioner and the
injuries complained of by him and shall be verified
by him. If the proceedings of the board shall be sus-
tained or upheld by the circuit court, its orders, deci-
sions or judgments revoking said license shall re-
main and continue in full force and effect. And any
such license so revoked by the board shall, pending
said review on *certiorari,* stand revoked and so remain
until the proceedings of the board relating thereto
shall be quashed or otherwise annulled by the circuit

court on said writ of *certiorari*. Testimony may be taken by deposition, to be used in evidence on the trial of such charges before the board in the same manner and under the same rules and practice as is now provided for the taking of depositions in civil cases.—[Laws 1901, p. 207; amended, Laws 1907, p. 359, Laws 1909, p. 667.]''

The complaint and evidence before said board is set out in our statement of the case. Notice was given appellant; he appeared at the hearing, objected to the jurisdiction of said board over him, took no further part in the proceedings before said board, but filed in the circuit court of Cole county, Missouri, where the hearing was had, a petition for *certiorari*, etc.

Said board certified to the circuit court aforesaid a copy of the complaint, record entries, proceedings and evidence, relating to appellant's hearing before said board, and the case was heard in the circuit court upon the pleadings, record and evidence certified by said board. The decision of the latter was sustained, and the writ of *certiorari* quashed.

Two propositions are presented on the record made before said board: (a), Does the complaint filed before the board state a good cause of action under said section 8317; and (b), Was the evidence adduced at the hearing before said board sufficient to sustain the charges made in the complaint, and to warrant said board in revoking appellant's license to practice medicine in Missouri for ten years?

The evidence is clear and convincing that appellant, in the town of Columbia, county of Boone and State of Missouri, did fill out, sign as a physician, and deliver to various persons in said town, during February, 1910, and up to the 15th of March in said year, 778 prescriptions for whiskey, without any other ingredients being called for therein, to be used as a beverage, and for which he received twenty-five cents

for each alleged prescription so made out and signed; that all of these prescriptions were filled at the drug store mentioned in evidence and presumably the whiskey was furnished as called for in each prescription. In other words, the complaint alleges, and the evidence shows, that appellant, in a local option town and county, was engaged in the wholesale business of filling out *blank* prescriptions for whiskey alone, to be used as a beverage, by inserting in said blank prescription, the name of purchaser and signing his own name thereto, as a physician, and for which he charged and received twenty-five cents for each of said prescriptions.

The complaint and evidence show that he sold largely to negroes, and that his general reputation in regard to such matters was bad. He was present at the hearing before the board and failed to testify or to meet in any manner the damaging testimony produced there by complainants. He was engaged in this disreputable business at a great seat of learning, where hundreds of students are attending school, and yet does not offer any excuse in the record here for prostituting his office as physician, and bringing disgrace upon the profession to which he belonged.

Section 8317 supra provides that:

"The board may refuse to license individuals of bad moral character, or persons guilty of unprofessional or dishonorable conduct, and *they may revoke licenses, or other rights to practice, however derived,* for like causes, and in cases where the license had been granted upon false and fraudulent statements, after giving the accused an opportunity to be heard in his defense before the board as hereinafter provided. Habitual drunkenness, drug habit or excessive use of narcotics, or producing criminal abortion, or soliciting patronage by agents, shall be deemed unprofessional and dishonorable conduct within the meaning of this section, but these specifications are

not intended to exclude all other acts for which licenses may be revoked.''

It needs no citation of authorities to demonstrate that appellant's conduct aforesaid, as disclosed by the undisputed facts in the record, was both unprofessional and dishonorable. In addition to the foregoing, every prescription of above character which appellant signed as physician and delivered, and upon which whiskey was obtained as a beverage, constituted a crime against this State.

Section 5784, Revised Statutes 1909, reads as follows:

''Any physician, or pretended physician, who shall make or issue any prescription to any person for intoxicating liquors in any quantity, or for any compound of which such liquors shall form a part, to be used otherwise than for medicinal purposes, or who shall issue more than one prescription at the same time to any one, for intoxicating liquors, or for any compound of which such liquors shall become a part, or who shall make or issue any prescription contrary to any existing law, shall be deemed guilty of a misdemeanor, and upon conviction be punished by a fine of not less than forty nor more than two hundred dollars.''

While appellant might have been successfully prosecuted under the statute last quoted, it does not militate in the least against the right of the State Board of Health, under the circumstances detailed in this record to revoke his license.

The record of said board is free from error, and the revocation of appellant's license to practice medicine and surgery in Missouri for ten years was fully justified by the record in this cause. The judgment of the circuit court, sustaining the action of said board, is accordingly affirmed. *Brown, C.,* concurs in result.

PER CURIAM.—This cause coming into Banc from Division No. One, the opinion of RAILEY, C., is adopted as the opinion of the court. *Woodson, C. J.,* and *Graves, J.,* concur; *Bond, Blair* and *Revelle, JJ.,* concur in result only, and *Faris* and *Walker, JJ.,* dissent.