IN MATTER of Application of EDITH SHELLEY for Blind Pension v. MISSOURI COMMISSION FOR THE BLIND, Appellant.

In Banc, July 18, 1925.

1. **APPELLATE JURISDICTION:** Suit Against State Commission: Commissioners Not Named. This court has jurisdiction of appeals in cases to which a state officer is a party, and it therefore has appellate jurisdiction of a suit against the Missouri Commission for the Blind. Although a correct petition for an appeal to the circuit court from an adverse ministerial ruling by the Commission should name the individual commissioners, yet where the question of defect of parties is not raised, and as the Commission is a collective name for the individual commissioners who constitute it, and has no existence apart from them, the suit will be considered as one against the commissioners, and as they are state officers this court has jurisdiction.

2. **CONSTITUTIONAL LAW:** Tests of Blindness: Light Perception. Under the provision of the Constitution (Art. 4, sec. 47) authorizing such "pensions to deserving blind, as may be provided and regulated by law," the Legislature, in enacting a pension statute, had authority to define "deserving blind," to determine what persons should be entitled to pensions and by what tests their vision should be determined.

3. **PENSION FOR BLIND:** Light Perception: Definition. By the Act of 1923 (Laws 1923, p. 302, sec. 2) the Legislature intended to give to the words "light perception" a peculiar and appropriate meaning in law, and that the amount of vision should be determined by a scientific test.

4. ———: ———: **Ordinary Meaning: Experiment.** If the words "light perception" as used in the Blind Pension Act are taken in their plain and ordinary and usual sense, and not as a technical expression, they mean perception of light, and not perception of form or movement, and to determine whether a person has vision greater than light perception an experimental test by an expert is required. There is no standard by which persons generally can determine the exact meaning of the expression "what is known as light perception" used in the statute.

5. ———: ———: **Evidence.** The statute provides that no person shall be entitled to a pension who has vision "greater than what is known as light perception" and that "no person shall be entitled to receive a pension except upon scientific vision test supported by the certificate of a competent oculist, approved by the Commission, that such person does not possess a greater vision" than light perception. Experts without exception testified that perception of motion showed a greater degree of vision than light perception, and that perception of form showed a still greater degree of light perception. The applicant testified that she could perceive motion and, at a certain distance, form; she could see better with her left eye than with her right eye; with her left eye she could see the direction of the motion of a hand at a distance of a foot; at a distance which appeared to be less than a foot, she could count the fingers of one hand. These things appeared in several scientific tests, and in the certificate of the oculist. *Held*, that, under such statute, she is not entitled to a pension.

6. ———: **Deserving Blind: Legislative Intention.** It was not the purpose of the Act of 1923 (Laws 1923, p. 302, sec. 2) to provide a pension for every deserving person of defective vision, but only for those possessing a very limited degree of vision, or almost totally blind; and it used the words "light perception" as. a definite, ascertainable and reliable measure by which to test the "deserving blind." These things are shown by comparing the act with the Act of 1921, which granted a pension to persons possessing a greater degree of vision and which was repealed and the Act of 1923 enacted in lieu of it.

7. ———: **Ex parte Proceeding: Right of Commission to Appeal.** If a proceeding by an applicant, brought in the circuit court, to compel the Commission for the Blind to grant her a pension is *ex parte*, to which the commissioners are not parties and have no right to appeal from a judgment in her favor, because of no interest in the result, they are not bound by such judgment and may disregard it, and it is worthless to. applicant. [On Motion for Rehearing.]

8. ———: ———: ———: **Suit Against Commission: No Objection at Trial.** Where applicant brought her suit against the Commission

for the Blind, the right of the commissioners to be made parties should have been questioned when they appeared to defend the proceeding, and if not then made it will not be ruled that the Commission is not entitled to an appeal from a judgment against them. [On Motion for Rehearing.]

9. ———: **The Word Appeal: Used in Sense of Review by Certiorari.** The statute (Sec. 9, Laws 1923, p. 306) is inaccurate in saying that an applicant for a pension who is aggrieved may "appeal" from the ministerial order of the Commission for the Blind denying the application. The word "appeal" was evidently used in the sense of review by writ of *certiorari.* [On Motion for Rehearing.]

Corpus Juris-Cyc. References: Appeal and Error, 3 C. J., Section 522, p. 654, n. 6; Section 790, p. 886, n. 83. Courts, 3 C. J., Section 511, p. 1081, n. 56; Section 516, p. 1090, n. 47. Paupers, 30 Cyc. p. 1067, n. 24, p. 1140, n. 64, 65 New; p. 1141, n. 81, 81.

Appeal from Greene Circuit Court.—*Hon. Guy D. Kirby,* Judge.

REVERSED.

*C. H. Skinker, Jr.,* for appellant.

The testimony of the oculists as to the meaning of the technical terms "light perception" and "greater than light perception" shows that there is no ambiguity about the meaning of these terms in their profession. They were nearly unanimous on the crucial proposition that the ability to see the direction of motion at one foot constituted vision "greater than light perception." State ex rel. v. Gammon, 73 Mo. 426. When the Legislature uses technical terms, they should be given the meaning they have in the trade or profession to which the terms apply. State v. Murlin, 137 Mo. 297.

*Thomas H. Gideon* for respondent.

(1) The language of a statute should be given its plain and ordinary meaning where it has no special or technical meaning. Keeney v. McVoy, 206 Mo. 68. (2)

All statutes that have a charitable or beneficent purpose should be given a liberal construction, such as the Blind Pension Statute. Dahlin v. Mo. Comm. for Blind, 262 S. W. 424; O'Dea v. Cook, 176 Cal. 659; Ryan v. Foreman, 181 Ill. App. 262, 262 Ill. 175; Straughan v. Meyers, 268 Mo. 580; Lusk v. Pub. Serv. Comm., 277 Mo. 264. (3)  Where the language used in a statute is of doubtful import; or ambiguous and uncertain; or its literal meaning would lead to palpable injustice, contradiction or absurdity, the intention of the Legislature and purpose of the law must be looked to as the cardinal rule of construction. Dahlin v. Mo. Comm. for Blind, 262 S. W. 424; Gleason v. Board of Commrs., 92 Kan. 632; Grimes v. Reynolds, 94 Mo. App. 584; In re Bomino's Estate, 83 Mo. 441; Humes v. Ry. Co., 82 Mo. 227; Bowers v. Smith, 111 Mo. 65; State ex rel. v. Corkins, 123 Mo. 66; State ex rel. v. Fields, 112 Mo. 558.  (4)  Light perception as used in the act, we construe to mean all that field or scope of vision from the mere ability to distinguish between light and darkness up to the ability to discern form; that is, when one is able to recognize the form of an object, such person has a greater vision than light perception. We do not believe the Legislature intended such a restricted and limited scope. Such a restricted and limited construction would for all practical purposes, render ineligible all those except the totally blind. Dahlin v. Mo. Comm. for Blind, 262 S. W. 424; 1 Schmidtmann's Handbook of Medico-Legal Medicine (9 Ed.) 564. (5)  There is no discrimination against any class of deserving blind when Section 2 is properly and liberally construed. If any discrimination is made it would have to be made by an erroneous construction by the courts. Bowers v. Smith, 111 Mo. 65.

WHITE, J.—Edith Shelley, the respondent, made application under the Act of 1923, Laws 1923, p. 302, to the Commission for the Blind, for a pension as a deserving blind person. Her application was rejected by the Commission for the reason that she "did not come

under the purview of the blind pension law, Section 2" of the Blind Pension Act of 1923. She appealed to the Circuit Court of Greene County. The court heard the evidence, sustained the order of the Commission, and dismissed the application. The petitioner filed a motion for new trial which, June 30, 1924, the court sustained. The Commission then appealed from the order sustaining the motion, to this court. It was admitted by the attorney for the Commission that the applicant was in every way qualified to receive a pension as a blind person, except that the Commission did not admit that she was blind within the meaning of the law, because she had more than "light perception," as provided in said Section 2.

The trial court took evidence. The petitioner introduced "Exhibit B," a circular issued by the Missouri Commission for the Blind for the information of applicants and examiners which provided tests for determining who were the deserving blind. Among other things this circular contained the following:

"It will be very easy for the general physician to determine if the appellant's vision is better than light perception. If the applicant is seated before a well-lighted window, having his back to the light, then the examiner can move his hand up and down from right to left against a dark colored background (such as the examiner's dark clothes or some dark-colored surface).

"If the applicant can tell definitely the direction of the motion of the examiner's hand at two feet, he can see better than light perception and therefore is not eligible for a pension. If the contrary is so, or if there is doubt in the physician's mind as to the ability of the applicant to distinguish the movement of the hand at two feet, he should be classed as not seeing better than light perception and should be referred to the examining oculist. It is to be noted that vision in both eyes must be zero or light perception only in order that the applicant may be eligible to a pension."

The petitioner testified as follows:

"By Mr. Skinner:  Q.   Your sight is better in your left eye than your right eye?  A.   Yes sir.

"Q.   You can count figures at a distance of one foot with your left eye, can you not?  A.   I can about that far (Witness indicating).

"Q.   Can you see the direction of motion of the hand at one foot with your left eye?  A.   Yes, sir."

And after experts testified, she was recalled and testified as follows:

"By Mr. Gideon:  Q.   Can you see anything in front of your eyes (Attorney placing hand before witness's eyes?  A.   No, sir.

"Q.   Can you distinguish this motion (Attorney passes hand before witness's eyes)?  A.   Just something going in front of me.

"Q.   Can you count the fingers there?  A.   No, sir.

"Q.   Can you see that (Attorney passing hand in front of witness's eye)?  A.   No, sir.

"Q.   Can you count your fingers?  A.   I can that close (Witness indicating)."

Eight or nine oculists were summoned as witnesses and testified.  The Commission in a letter to Dr. Coffelt, one of the witnesses, defined the degrees of blindness, as follows:

"It is perfectly apparent to every oculist that no absolute differentiation between the degrees of vision can be fixed, but in a general way all of us recognize the following classes:

"(a)   Total and absolute blindness.
"(b)   Perception of light.
"(c)   Recognition of motion.
"(d)   Recognition of form."

Dr. Coffelt testified that that was the proper classification of the degrees of blindness used in his profession.  The oculist witnesses were practically unanimous in testifying that the perception of motion showed a greater degree of vision than light perception, and that

a recognition of form showed a still greater degree of vision. A sample of such testimony is as follows:

"Q. Now, we want to find out what is meant by the words 'Light Perception' in your profession: I will ask you this question: would you say that a person who is able to see the direction of the motion of the human hand one foot from the eye, one foot in front of the eye, has greater vision than what is known in your profession as light perception? A. Yes sir.

"Q. The ability to count the fingers on the hand held at one foot in front of the eye would indicate still greater vision? A. Yes, sir."

Light perception was defined as ability to tell day from night; distinguish between a dark room and a light room; to cover the eye with the hand and take it away and tell whether it is light or dark; or to take a patient into a dark room, turn on the light, and if the patient can tell when the light is turned on he has light perception. Some of the oculists were asked if they were obliged to take the statement of the patient as to whether he could see in any certain degree. The answer was that the statement of the patient in determining motion and form would have to be relied upon to some extent, but there were tests by which they could tell whether the patient really did perceive. It was said that the pupil would react to light if the eye was not absolutely blind; that there were a number of well known tests by which the vision could be more or less determined.

The trial court held that, under Section 2 of the Blind Pension Act, which provides that no person shall be entitled to a pension who has vision greater than light perception, the petitioner was not entitled to a pension, and later sustained a motion for new trial after a ruling by the Springfield Court of Appeals in case of Dahlin v. Missouri Commission for the Blind, 262 S. W. 420, in which that court defined light perception in a way that would include vision such as that possessed by the petitioner here.

I.   The appellant expresses some concern about the jurisdiction of this court. This court has jurisdiction of appeals whenever "any State officer is a party." The Missouri Commission for the Blind is provided for in Section 12360, Revised Statutes 1919, which authorizes the appointment of five persons constituting such commission. Undoubtedly the commissioners are State officers. The names of the individual commissioners do not appear as parties to this proceeding, but no question has been raised as to a defect of parties defendant. The Commission is a collective name for the individual commissioners who constitute the commission. The Commissioners are, therefore, in court. A correct petition for appeal to the circuit court from a ruling of the Commission would name the individual commissioners.

*Appellate Jurisdiction.*

This situation is not to be confused with that in the case of State to use of Nee v. Gorsuch, 303 Mo. 295, where it was held that the jurisdiction of this court attaches in such case only when the party which would give jurisdiction is a "party to the record." In that case the judges of the county court were parties to the record. The county was not. If the county had been a party to the record, this court would have had jurisdiction. As it was, this court was without jurisdiction. A county court is not a county, just as the Missouri Commission for the Blind is not the State of Missouri. A county court is an official body performing certain functions for the county, while the county is a corporate entity possessing an individuality of its own, and would exist and function if there was no county court. You cannot sue an office, but may sue an officer in his official capacity. An administrator may be a party to a suit, but an administration cannot be. One may sue judges of the county court as parties to the record without suing the county. In this case the Commission for the Blind is not a separate entity, but it is collectively the commissioners; it has no existence apart from its members. If the commissioners are not in court, then there is no case here.

We think, therefore, that a Court of Appeals is without jurisdiction of an appeal in such case; that this court alone has jurisdiction of all appeals from the ruling of the circuit court on appeal from ruling of the Missouri Commission for the Blind.

II. The Act of 1923, under which the petitioner seeks a pension, Section 2 provides:

"No person shall be entitled to a pension under this act who has vision with or without proper adjusted glasses, *greater than what is known as light perception;* and no person shall be entitled to receive a pen-
<span style="float:left">Valid Statute.</span> sion *except upon scientific vision test supported by the certificate of a competent oculist,* ap· proved by the commission, that such person does not possess a greater vision than that provided above in this section; and every person passing the vision test, and having the other qualifications provided in this act, shall be entitled to receive a pension of three hundred dollars per annum, payable quarterly."

The Constitution, Article IV, Section 47, authorized the General Assembly to grant "pensions to deserving blind, as may be provided and regulated by law."

Under that provision of the Constitution the Legislature no doubt had a right to define "deserving blind," to determine who and by what tests one should come within the provisions of any law it might enact to pension blind persons.

III. The respondent calls attention to Section 7058, Revised Statutes 1919, which provides that in construing a statute, "words and phrases shall be taken in their plain or ordinary and usual sense, but techni-
<span style="float:left">Light Perception: Definition.</span> cal words and phrases having a peculiar and appropriate meaning in law shall be under-
. stood according to their technical import."
The Court of Appeals, in the Dahlin case, held that the expression "light perception" had no peculiar and ap· propriate meaning in law, and therefore that court felt

at liberty to define the term as the justice of the case required.

It looks as if the Legislature intended to give "light perception" a peculiar and appropriate meaning in law, for Section 2 provides that no person shall be entitled to receive a pension "except upon a scientific vision test." A scientific vision test could not be applied except by scientific experts in that particular branch of knowledge. The section further provides that the test must be "supported by the certificate of a competent oculist." Then, whether the person comes up to the requirement of the section, in having no greater than light perception, must be determined by the experts who know the subject, who have made the test, according to their method of making such tests.

IV.  Suppose, however, we say that "light perception" is not a technical expression, and we must construe the expression in its plain and ordinary and usual sense.

*Tests: Evidence.* Light perception is not an expression ordinarily used. Each of the separate words are in ordinary use and everybody knows what they mean, and we assume that everybody knows what the two words together, divested of all technical significance, mean. We know that "light perception" must be perception of light. Light perception could not be perception of something else than light, such as motion, or form. A perception of anything that required greater vision than the perception of light would be greater than light perception in the meaning of the statute.

Concede that we must take the language in its ordinary significance; that we know, without expert evidence, the meaning of light perception, that we know the meaning of the perception of form and the perception of motion; still, it would require *experiment,* the evidence of those who have tested the matter, to determine whether perception of motion and the perception of form require a greater vision than the perception of light. That is why the act provides for scientific vision tests. The pa-

tient must be subjected to a test to see whether it has a greater degree of vision than light perception.

Section 2 further shows an intention to apply a scientific test by use of the expression of *"what is known as light perception."* Known where and by whom? Among people generally there is no standard test of such thing; it is only among those acquainted with the subject, experts on vision, that the expression is applicable to a given case. Therefore, it must be the tests of experts which determine the matter. The experts, without exception, said that perception of motion showed a greater degree of vision than light perception and that perception of form showed a still greater degree of light perception. The testimony of the applicant showed that she could perceive motion and, at a certain distance, form. The classification mentioned above, the Commission no doubt obtained by consulting experts; probably some of the Commission themselves are oculists. The petitioner could see better with her left eye than with her right eye; with her left eye she could see the direction of motion of a hand at a distance of a foot. That appeared in several tests and appeared in the report of the oculist, attached to her application. Her evidence further shows that at a certain distance, which appeared to be less than a foot, she could count the fingers of one hand. So whether we take her application to the Commission and the affidavit of the oculist accompanying it, or whether we take the evidence in the trial court, the applicant possessed more than light perception, and under the law was not entitled to the pension.

V. The petitioner had been a pensioner under the law of 1921, which provided a degree of vision,—two forty-fifths of vision. That statute was repealed and the Act of 1923 enacted, it was said, to cut down the number of pensioners, because the State could not afford to pension so many. We must take into consideration the original law and the law which was enacted to replace it, in arriving at the purpose of the Legislature. They cer-

tainly did not intend to pension every deserving person of defective vision. The deserving, as the Legislature defined the word, were those possessing a very limited degree of vision, almost in the condition of the totally blind; we must take the legislative act as we find it, and ascertain the legislative intention by the language used. This court said in the case of Chrisman v. Linderman, 202 Mo. 605, l. c. 623: "Courts get at the legislative intent through the language employed to evidence that intent."

The legislators, in using the expression "light perception," must have intended a certain, definite, ascertainable condition in the applicant; it was intended as a reliable measure by which to test the "deserving blind." What they meant must not be left to speculation, nor to philosophical abstractions, nor to judicial discretion as to whether an individual subject is deserving. They left no doubt about the method by which the merits of a case must be determined.

The judgment of the circuit court is reversed and the cause is remanded, with directions to set aside the order granting a new trial and reinstate the judgment first rendered. All concur.

### ON MOTION FOR REHEARING.

PER CURIAM.—Respondent in her motion for rehearing makes the point that this is purely an *ex parte* proceeding; that the Commissioners for the Blind are not parties to it, had no interest in the result of the judgment in the circuit court, and therefore they had no right to appeal.

It is further claimed in the motion that this court has no jurisdiction of an appeal of this case in the absence of the constitutional question properly raised, because the Commissioners for the Blind not being parties, no State officer is a party.

These suggestions were not presented in the briefs, nor in the oral argument, and for that reason they were not considered in the opinion. Respondent points to her

motion to dismiss the appeal for want of jurisdiction, filed and overruled before the case was argued orally, in which motion these same points were made.

Inasmuch as respondent insists upon a determination of these questions we will now consider them.

I.   If respondent is correct that this is an *ex parte* proceeding, and the Commissioners for the Blind are not parties to it, then they are not bound by any judgment the circuit court may render, and they may disregard such judgment. We fail to understand what a judgment for the petitioner would be worth to her in such case.

II.   The Commission for the Blind is not a court, and, under the Constitution, cannot perform any judicial functions; as the petitioner says in her motion, it is merely a ministerial body. [Lusk v. Stinson, 268 Mo. 109, l. c. 116-117.] The action of the Commission in rejecting an application is not a judgment; it is a ministerial order. The statute (Section 9, Laws 1923, p. 306) is inaccurate in saying that one aggrieved by the action of the Commission may "appeal" from its decision. It is not in any sense an appeal. The evident intention of the Legislature was to provide that the circuit court might review the action of the Commission, just as it reviews the action of the Public Service Commission or of a Board of Equalization. Said Section 9 provides for notice to the Commission, before the circuit court can proceed to hear a case. The action of the Public Service Commission or a Board of Equalization is brought to the attention of the circuit court by a petition for a writ of *certiorari* to have the records of the proceedings of such Commission or Board certified for review by the court. When that is done, and not before, there is a case in court, and for the first time the Commissioners or the Board members become parties to the proceedings. They are in court to show cause why their proceeding should be annulled.

In this case the applicant filed in the Circuit Court of Greene County her petition in which she recited that

she had made application to the Commission for a pension; that the application was rejected notwithstanding her qualifications; that she was aggrieved by the action of the Commission, and prayed that her application be taken up and tried *de novo* by the court. No objection was made to this form of the proceeding to get the action of the Commission before the circuit court. On timely objection that court might have required the proceeding to be more formal. After the filing of that petition the Commission was "duly notified" and appeared by attorneys in court. How could *it* be notified except by service of notice on the Commissioners? On the petitioner's theory, why should the Commissioners be notified? And why should they be allowed to appear and defend? So far as the objection shows the petitioner made no objection to the Commissioners' appearance. The right of the Commissioners to be parties to the proceeding should have been questioned then, if petitioner desired to make the point.

The Commissioners became parties when the petition of the applicant was filed in the circuit court and they were notified of the proceeding which brought into question their official acts. They were "aggrieved" by the order of the circuit court and had a right to appeal.

The motion for rehearing is therefore overruled.