RHODA ENGLISH v. MISSOURI COMMISSION FOR THE BLIND, Plaintiff in Error.—15 S. W. (2d) 790.

Division One, March 29, 1929.

*L. S. Dewey* for plaintiff in error.

LINDSAY, C.—Rhoda English, the defendant in error, made application to the Commission for the Blind under the Act of 1923, Laws 1923, page 302, for a pension as a deserving blind person. Her application was denied by the Commission upon the ground that she did "not come under the purview of the Blind Pension Law, Section 2." She appealed to the Circuit Court of Newton County. The court heard evidence, made a finding that the applicant was a "blind person within the meaning of the law," and adjudged that she be awarded a certificate entitling her to be placed upon the blind pension roll. The Commission procured a writ of error out of the Springfield Court of Appeals. After return was made to the writ, the Court of Appeals ruled that it was without jurisdiction, and certified the cause to this court.

That appellate jurisdiction is vested in this court in cases of this character was ruled in Shelley v. Missouri Commission for the Blind, 309 Mo. 612. In that case, the application of the petitioner was denied by the Commission upon the identical ground above stated. The provisions of the Act of 1923, and particularly Section 2 thereof, were fully considered in the Shelley case. The question there, was whether the applicant was a blind person within the meaning of Section 2 of the act. That section is as follows:

"No person shall be entitled to a pension under this act who has vision with or without proper adjusted glasses greater than what is known as light perception; and no person shall be entitled to receive a pension except upon scientific vision test supported by the certificate of a competent oculist, approved by the commission, that such person does not possess a greater vision than that provided above in this section; and every person passing the vision test and having the other qualifications provided in this act shall be entitled to receive a pension of three hundred ($300) dollars per annum, payable quarterly."

It was held that the Legislature, by use of the words, "what is known as light perception," intended to give a peculiar and appropriate meaning—that is, intended to give to the words, 'light perception'—the meaning given those words by experts and scientific

authorities, 'a certain, definite, ascertainable condition in the applicant;' and, by requiring a 'scientific vision test,' further intended that a test be made by experts, to determine whether the applicant had no greater vision than 'light perception.' ''

The question to be determined here is whether under the evidence and under the construction given to Section 2 of the act in the Shelley case, the defendant in error was shown to have no greater vision than light perception. In that case, it was ruled in effect that the words, ''light perception'' as used in the Act of 1923, meant the degree of blindness next to total or absolute blindness; that perception or recognition of motion showed greater vision than light perception, and perception or recognition of form, showed greater vision than recognition of motion. It was said, l. c. 621: ''A perception of anything that required greater vision than the perception of light would be greater than light perception in the meaning of the statute.'' The effect of the ruling was, that a person who has no greater vision than light perception, that is, has no ''recognition of motion,'' is entitled to the pension; and one who has vision extending to ''recognition of motion,'' is not so entitled.

In the Shelley case, under the evidence of the experts, the words ''light perception'' as used by oculists, and authorities upon the subject, and as construed in the opinion, meant a lesser degree of vision than ability to recognize motion. In that case it was determined that the applicant had greater vision than ''light perception,'' because, the applicant could distinguish or recognize motion—as of the hand, at a distance of twelve inches from the eye.

According to the expert testimony in the case at bar, the term ''vision,'' as applied in these tests, is subdivided into four divisions— light perception, which means ability merely to distinguish ordinary light from darkness; second—light projection, or ability to distinguish the source of location of the light; third—recognition of motion; and fourth—recognition of form; and recognition of form shows ability of vision greater than that of recognition of motion; recognition of motion shows a vision greater than is meant by light projection, and light projection in turn shows vision greater than light perception. In the Shelley case, it was ruled that the Legislature by the Act of 1923, which repealed the act theretofore existing, did not intend to pension every deserving person of defective vision, but that the ''deserving,'' as the Legislature defined the word, were only the totally blind, and those who had very limited degree of vision, and were almost in the condition of the totally blind.

There remains the question whether, under the evidence, the applicant is within the eligible class, as that class is defined.

Upon the hearing before the court, there was introduced in evidence the application of the petitioner, defendant in error; also the report of the oculist who examined the petitioner, as provided by

Section 6 of the act, and in accordance with the form and requirements prescribed by the Commission. The defendant in error was sworn as a witness. The attorney for the Commission objected to her testifying as to the present condition of her eyes, on the ground that the condition of her eyes at the time her application was acted upon, was the subject of the inquiry. The objection was overruled, and exception was saved.

In the Shelley case, upon motion for rehearing, it was held that the Commission for the Blind is merely a ministerial body; that its action in rejecting an application is not a judgment, but a ministerial order, and that the statute, Section 9, Laws 1923, page 306, "is inaccurate in saying that one aggrieved by the action of the Commission may 'appeal' from its decision." It was further said: "The evident intention of the Legislature was to provide that the circuit court might review the action of the Commission, just as it reviews the action of the Public Service Commission or of a Board of Equalization." Under that ruling, the record made before the Commission came before the court for review, and the cause was of the nature of a proceeding in certiorari.

The defendant in error, in her testimony before the court at a time several months later than the time of her examination by the oculist, testified that she could "not see anyone about the room" (referring to the court room); and also said: "All I can see is the light at the window." She further testified:

"Q. Can you see your hand? A. Well, I can't tell what my hand was at all.

"Q. You can just see movement? A. Yes, just like a shadow.

"Q. At what distance? A. Just right at my face.

"Q. Just close up to your face? A. Yes, sir."

Dr. Everett Powers, the eye specialist who made the examination and report filed with the Commission, was called as a witness for the Commission, and testified that at the time of the examination, defendant in error could detect the direction of the movement of the hand at a distance of one foot away, but could not distinguish form at that distance, or at a point closer to the eye. This statement was made with the report before him and he was stating or reading the contents of the report. That part of the written report of the result of the examination, is as follows:

"Is the applicant totally blind and absolutely unable to distinguish between ordinary daylight and darkness?

"In the right eye? No. In the left eye? Yes.

"(For determining the answers to the following questions regarding the vision, place applicant near a well-lighted window with back to the light.)

"2. If not, can the applicant see:

"(a) The direction of motion of a hand at one foot?

"With the right eye? Yes. With the left? No.

"(b) Can the applicant count fingers at one foot?

"With right eye? No. With left eye? No.

Dr. W. P. Post, a specialist, was also introduced by the Commission. He did not testify that he had examined the eyes of the defendant in error; but testified concerning the varying degrees of vision, and defined the terms used to designate the degrees, or subdivisions, as recognized by the authorities on the subject; and he also testified as to the manner of making such examinations. According to the expert testimony such tests can be made and the degree of vision ascertained by the tests. Dr. Post defined light projection as the term is used by the specialists, as the condition "when you can locate the source of light, and not distinguish motion;" and his testimony is to the effect, as has been heretofore stated, that "light projection" is a condition between mere "light perception" and recognition of motion, or ability to distinguish movement and direction of movement.

The evidence in this record shows that defendant in error had "vision greater than light perception," as those words in the statute have been construed; and this is so, whether the condition be considered as of the time of the examination, or as of the time of the trial and by her own testimony. In either event, it is shown that she could distinguish the source of light, and could detect movement to the extent required by the recognized tests. This conclusion is reached in view of the evidence, and of the clear intention of the Legislature. As was said in th Shelley case, l. c. 623: "What they meant must not be left to speculation, nor to philosophical abstractions, nor to judicial discretion as to whether an individual subject is deserving. They left no doubt about the method by which the merits of the case must be determined." Measured by the standards fixed, defendant in error failed to show that she had no greater vision than light perception.

It results that the judgment must be reversed. *Seddon* and *Ellison*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by LINDSAY, C., is adopted as the opinion of the court. All of the judges concur.