CATHERINE FOSTER v. MISSOURI COMMISSION FOR THE BLIND, Plaintiff in Error.—37 S. W. (2d) 450.

Division. One, March 31, 1931.

*L. E. Dewey* for plaintiff in error.

RAGLAND, J.—This case comes to the writer on reassignment. On June 13, 1924, the Circuit Court of Newton County, on an appeal from the action of the Missouri Commission for the Blind rejecting the application of Catherine Foster for a pension, adjudged and decreed that she be awarded a certificate entitling her to be placed on the blind pension roll, and that her pension commence as of date July 25, 1923. Thereafter, and on June 6, 1925, the Missouri Commission for the Blind sued out of the Springfield Court of Appeals a writ of error on such judgment. At its October Term next following, that court transferred the cause to this court, on the ground that it was without jurisdiction thereof. Defendant in error, Catherine Foster, never made any appearance in this court, but in the course of his argument of the cause, counsel for the plaintiff in error stated that Catherine Foster died on the second

day of January, 1925. The statement was thereupon taken as and for a suggestion of the death of the defendant in error, and the cause was continued. At the second term thereafter Lizzie Wass, administratrix of Catherine Foster, deceased, entered her voluntary appearance and asked that the cause be revived in her name as such administratrix, and by agreement of parties that was done.

The proceeding under review was initiated under, and its disposition must be governed by, the act providing pensions for the deserving blind, as passed in 1923. [Laws 1923, pp. 302 et seq.] In 1925, Section 9 of the act was repealed and a new section enacted in lieu of it. [Laws 1925, pp. 316-17; now Sec. 8901, R. S. 1929.] Under its provision any person aggrieved by the action of the commission for the blind may appeal to the circuit court, where a trial *de novo* shall be had "and the judgment rendered thereupon shall be final." In other words such judgments are not now reviewable on appeal or writ of error. But as the writ of error in this case was sued out before the Act of 1925 went into effect, it must be proceeded with in all respects in accordance with the law as it stood prior to the change. [Sec. 658, R. S. 1929.]

There is involved in this proceeding the amount of a statutory pension for the blind from the date of its award as fixed by the circuit court, to-wit, July 25, 1923, to the date of Catherine Foster's death, January 2, 1925. Our jurisdiction grows out of the fact that the members of the commission for the blind are state officers. [Shelley v. Commission, etc., 274 S. W. 688.]

The pertinent provisions of the Act of 1923 are found in Section 2 (amended in important respects in 1925) which is as follows:

"No person shall be entitled to a pension under this act who has vision with or without proper adjusted glasses greater than what is known as light perception; and no person shall be entitled to receive a pension except upon scientific vision test supported by the certificate of a competent oculist, approved by the commission, that such person does not possess a greater vision than that provided above in this section; and every person passing the vision test and having the other qualifications provided in this act shall be entitled to receive a pension of three hundred ($300) dollars per annum, payable quarterly." [Laws 1923, pp. 303-04.]

The only question involved in this proceeding is whether the circuit court's finding, that Catherine Foster, upon scientific vision test, did not possess a greater vision than what is known as light perception, was supported by substantial evidence.

On the hearing in the circuit court plaintiff in error read the affidavit of Dr. Everett Powers, an oculist, which had been presented to the commission for the blind by Catherine Foster in con-

nection with her application for a pension. The affidavit so far as pertinent here was as follows:

"1. Is the applicant totally blind and absolutely unable to distinguish between ordinary daylight and darkness?

"In right eye? Yes. In left eye? No.

"2. If not, can the applicant see:

"(a) The direction of motion of a hand at one foot?

"With right eye? No. With left eye? Yes.

"(b) Can the applicant count fingers at one foot?

"With right eye?. No. With left eye? No.

"(c) Can the applicant recognize any letters?

"If so, give size of letter read or designation of letter from Snellen Test Types, also giving the greatest distance at which such letter can be made out.

"With right eye? No. With left eye? No."

Plaintiff in error also called Dr. W. B. Post, an oculist, who testified:

"Q. Now, you have just made some examination of Catherine Foster, who has appealed from the Commision? A. Yes, sir.

"Q. Now, what do you find; I wish you would tell the court what you find as near as you can, the condition of each eye separately, if you can remember, and if not, her two eyes? A. Well, there is very little between them, they both had the large scar called the cornea scar, which I would say resulted from a former ulcer, which is opaque and is not transparent.

"Q. What did you find about the condition of her eyes as to light perception? A. She has light perception.

"Q. Just how far does that extend, the sight or impression of light which she has, just tell the court how much she has and to what extent it goes? A. She just has, she has light perception and some projection but I cannot detect any evidence that she sees the movement of objects.

"Q. You tried her as to the movement of the hand? A. Yes, sir.

"Q. What did you find? A. I found that she didn't, in my opinion, see the movement of the hand at any distance.

"Q. She didn't? A. No, sir; that is, I could not detect any evidence of her seeing it.

"Q. And was that the same condition with both eyes? A. Both eyes; there is no difference in the visual test in either eye that I could detect.

"Q. Your opinion then, after examining the eye, would be what as to her light? A. That she now has what we would term as qualitative vision.

"Q. From your examination at more than two feet distance what did you find? A. That she, in my opinion, does not see the motion of an object."

Dr. Powers testified. that the applicant could see "the direction of motion of a hand at one foot." Dr. Post, also an oculist and for whose competency to make a scientific vision test, the commission vouched in calling him as a witness, testified, that he was unable to detect any evidence that the applicant could see the movement of objects, that in his opinion she could not see the movement of the hand at any distance. It is true that he said that she had light perception "and some projection," and that she had what he termed "qualitative vision," but he was not asked to explain what he meant by those terms. Dr. Post's testimony as a whole warranted a finding that the applicant's vision was not sufficient to enable her to perceive either motion or form at any distance—that it enabled her merely to distinguish between light and darkness. It was therefore substantial evidence that the applicant's vision was no greater than that of light perception. [Shelley v. Commission, supra.]

The judgment of the circuit court is affirmed. All concur.