ANDREW J. MURPHY, SR., Chairman, EDWARD C. CROW and HARRY P. DRISLER, Members of Unemployment Commission of Missouri, v. HURLBUT UNDERTAKING & EMBALMING COMPANY, a Corporation, Appellant.—142 S. W. (2d) 449.

Division One, June 28, 1940.

*Geo. B. Lang* and *Milo A. Lang* for appellant.

*Harry G. Waltner, Jr.*, chief counsel, and *Edward D. Summers*, assistant counsel, for respondents.

BRADLEY, C.—Plaintiffs recovered (before the court without a jury) a judgment against defendant in the sum of $411 alleged to be the amount owed for the year 1938, by defendant for employer contributions under our unemployment compensation law. [Laws 1937, p. 574 et seq., amended 1939, Laws 1939, p. 892 et seq.] Defendant appealed to the Springfield Court of Appeals, and that

court, on motion of plaintiffs and under Sec. 1914, R. S. 1929, Ann. Stat., p. 2587, transferred the cause here on the theory that a state officer is a party. [Constitution, Sec. 12, Art. 6.]

Our jurisdiction is not especially challenged, but whether challenged or not, it is our duty to determine such question. [Perkins v. Burks et al. (Mo.), 61 S. W. (2d) 756; Rust Sash & Door Co. v. Gate City Bldg. Corp. et al., 342 Mo. 206, 114 S. W. (2d) 1023.] Section 15, subdivision (h), Laws 1939, p. 925, requires that such action as here shall be in the name of the three unemployment compensation commissioners. This suit was filed subsequent to the effective date of the 1939 amendment, and therefore was commenced in the name of the three commissioners, instead of "in the name of the commission" as provided by subdivision (b) of Sec. 15, Laws 1937, p. 599, before amendment.

Plaintiffs contend that the members of the commission are *state officers* within the meaning of Sec. 12, Art. 6 of the Constitution, and that jurisdiction of the appeal is in this court. "A State officer within the meaning of that section (Sec. 12, Art. 6, Const.) is one whose official duties and functions are coextensive with the boundaries of the State." [State ex rel. Foerstel et al. v. Higgins et al., 144 Mo. 410, l. c. 412, and cases there cited, 46 S. W. 423.] Under this definition members of the State Board of Health are state officers (State ex rel. Conway v. Hiller et al., 266 Mo. 242, 180 S. W. 538; State ex rel. Lentine v. State Board of Health et al., 334 Mo. 220, 65 S. W. 943; State ex rel. Horton v. Clark et al., 320 Mo. 1190, 9 S. W. (2d) 635), and so are members of the commission for the blind (Shelley v. Missouri Commission For The Blind, 309 Mo. 612, 274 S. W. 688). "In order for jurisdiction to be in the Supreme Court on the ground that a state officer is a party, such officer must be a real party in his official capacity, in order to be a party within the meaning of the Constitution." [Klaber v. O'Malley (Mo.), 90 S. W. (2d) 396, l. c. 397, and cases there cited.] Certainly the "duties and functions" of the members of the unemployment compensation commission are "coextensive with the boundaries of the State" and since the statute requires such suit as here, to be "in the name of the three commissioners," there is no escape from the conclusion that plaintiffs in the present case are *state officers* and are real parties in their official capacity. We think that jurisdiction of the present appeal is in this court, and so rule.

Plaintiff's petition was in four counts. The first count alleged that "the defendant, during the calendar year beginning on January 1, 1937, ending on December 31, 1937, had in employment under contracts for hire, eight and more individuals performing services for it for some portion of a day in each of twenty different weeks of such calendar year and that the defendant is and at all times here-

inafter mentioned was an employer within the meaning of the unemployment compensation law.

"That the wages payable to all individuals by the defendant for employment occurring during the calendar quarter beginning on the 1st day of January, 1938, were in the total amount of three thousand five hundred twenty-five dollars ($3,525.00) and that by reason thereof, there became due and payable by and from the defendant and unto the State of Missouri and more particularly unto the unemployment compensation commission for the unemployment compensation commission fund, under and by virtue of the terms of the unemployment compensation law and under the rules and regulations of the unemployment compensation commission, on the 30th day of April, 1938, a contribution of 2.7 per cent of such wages or the sum of ninety-five dollars and eighteen cents ($95.18) together with interest thereon, at the rate of one per cent per month from and after said 30th day of April, 1938, until paid; that the full amount of said contribution and the interest thereon as aforesaid is now wholly due and unpaid.

"Wherefore, plaintiffs pray judgment against defendant in the sum of $95.18 and interest thereon at the rate of one per cent per month from and after the 30th day of April, 1938, to date and for costs of this action."

The second count, for $107.73, covered the calendar quarter beginning April 1st, the third count, for $97.88, covered the calendar quarter beginning July 1st, and the fourth count, for $110.21, covered the calendar quarter beginning October 1st.

In the answer, defendant admitted that "for the calendar year beginning January 1, 1937 and ending on December 31, 1937, it had in its employ eight people and was subject to title nine of the social security act (42 U. S. C. A., Sec. 1101 et seq.), and the enabling act (so called by defendant) of Missouri (Laws 1937, p. 574 et seq.) and did make its report as provided by law for the said calendar year, both to the (federal) treasury department, as provided by title nine, and to the State of Missouri as provided by the enabling or procedural act of June, 1937.

"Answering further defendant (states that it) did, at the time of filing the return due the State of Missouri, to-wit, January 20, 1938, give due and legal notice to the State of Missouri that it (defendant) was no longer subject to the provisions of either title nine or the procedural act of Missouri.

"Answering further, defendant denies that it was subject to the provisions of the procedural act, as charged in plaintiffs' petition, for any portion of the calendar year 1938, and that it is not justly or legally indebted to the State of Missouri or the unemployment compensation commission of Missouri in any amount whatsoever."

Plaintiffs, in each count, asked interest at one per cent per month, Sec. 15, Laws 1937, p. 598, but no interest was allowed.

Our unemployment compensation act (Laws 1937, p. 574 et seq.), hereinafter, for the most part, referred to as the act, in paragraph (g) of Sec. 3, defines *employing unit* as "any individual or type of organization, including any partnership, association, trust, estate, joint-stock company, insurance company or corporation, whether domestic or foreign, or the receiver, trustee in bankruptcy, trustee or successor thereof, or the legal representative of a deceased person, which has or subsequent to January 1, 1936, had in its employ *one or more* (Italics ours) individuals performing services for it within this state."

Paragraph (h) of Sec. 3 of the act defines *employer* as: "(1) Any employing unit which for some portion of a day, but not necessarily simultaneously, in each of twenty different weeks, whether or not such weeks are or were consecutive, *within either the current or the preceding calendar year* (Italics ours) has or had in employment, eight or more individuals irrespective of whether the same individuals are or were employed in each such day; (2) Any employing unit which acquired the organization, trade or business, or substantially all the assets thereof, of another which at the time of such acquisition was an employer subject to this Act; (3) Any employing unit which acquired the organization, trade or business, or substantially all the assets thereof, of another employing unit (not an employer subject to this Act) and which, if subsequent to such acquisition it was treated as a single unit with such other employing unit, would be an employer under paragraph (1) of this subsection; (4) Any employing unit which, together with one or more other employing units, is owned or controlled by legally enforceable means or otherwise, directly or indirectly, by the same interests, or which owns or controls one or more other employing units by legally enforceable means or otherwise, and which, if treated as a single unit with such other employing units or interests, or both, would be an employer under paragraph (1) of this subsection; (5) Any employing unit which, having become an employer under paragraphs (1), (2), (3), or (4), *has not, under Section 7* (Italics ours), ceased to be an employer subject to this Act. . . ."

It is conceded that defendant was, during the year 1937, under the act, and that it paid all contributions accruing in 1937. It is also conceded that at no time in the year 1938, for which year plaintiffs claim defendant owes the contributions sued for, did defendant have *eight* employees, and it is conceded that on January 20, 1938, defendant notified plaintiffs by letter that throughout the year 1938, it would have only *seven* employees, and there is no claim that defendant had over seven employees at any time in 1938.

Plaintiffs contend that, under Sec. 7 of the act, defendant is liable for the contributions sued for notwithstanding that it had only seven employees throughout the year 1938. Sec. 7 provides: "(a) Any

employing unit which is or becomes an employer subject to this Act within any calendar year shall be subject to this Act during the whole of such calendar year. (b) .Except as otherwise provided in subsection (c) (not here involved) of this section, an employing unit shall cease to be an employer subject to this Act as of the first day of January of any calendar year, if it files with the commission, prior to the *fifth day of January of such year* (Italics ours) a written application for termination of coverage, and the commission finds that there were no thirteen different days, each day being in a different week within the preceding calendar year, within which such employing unit employed eight or more individuals in employment subject to this act. For the purpose of this subsection, the two or more employing units mentioned in paragraph (2) or (3) or (4) of sections 3 (h) shall be treated as single employing unit."

42 U. S. C. A., Sec. 1107 defines *employer* under the federal unemployment compensation act as follows: "The term 'employer' does not include any person unless on each of some twenty days during the taxable year, each day being in a different calendar week, the total number of individuals who were in his employ for some portion of the day (whether or not at the same moment of time) was eight or more." It will be noted that the federal act defining *employer* makes no reference to *the preceding calendar year* as does our state act, subdivision 1, paragraph (h) of Sec. 3, supra.

Plaintiffs in their brief say that the term *employer* was defined as in the state law to avoid "administrative difficulties which would be encountered if liability had to be determined each year. For example, in many instances it is necessary to wait the entire year before it can be determined whether or not a given employer falls within the federal definition, because he may not have the twenty weeks of eight or more immediately after the beginning of the year. Under these circumstances, it would be utterly impossible to determine which *employees* would be entitled to benefits prior to the expiration of the year if only the current year were used to determine liability. The amount of benefits payable to an unemployed individual is determined upon his earnings in covered employment for an employer subject to the act. Each calendar quarter the employer makes a report to the commission, showing the names of all individuals employed by him and the amount each has earned during that period, and the worker upon becoming unemployed draws benefits equal to a certain percentage of his earnings as reported by the employer. Now if it were necessary to wait until the end of every year before it could be determined whether or not a given employee was entitled to benefits, the object of the act would be practically defeated for the reason that the eligibility of such individuals could not be determined until the end of the year or long after the individual has become unemployed and in need of benefits."

Plaintiffs' statement of the *purpose* seems reasonable, but whatever the purpose may have been the law speaks for itself, and paragraph (h) of Sec. 3 and Sec. 7 of our unemployment compensation act are not ambiguous.

Section 19 (f) (1) of North Carolina's unemployment compensation law defines *employer* as "any employing unit which in each of twenty different weeks *within either the current or the preceding calendar year* (Italics ours), whether or not such weeks are or were consecutive, has, or had in employment, eight or more individuals, not necessarily simultaneously, and irrespective of whether the same individuals are or were employed in each such week." It will be observed that the North Carolina statute is quite similar to paragraph (h), supra. The Supreme Court of North Carolina, in Unemployment Compensation Commission v. Wachovia Bank and Trust Company, 215 N. C. 491, 2 S. E. (2d) 592, l. c. 598, after quoting the statute above set out, said:

"Thus, it appears that to be classed as an employer for the year 1936, subject to the tax, it is not necessary that such employing unit should have had in its employ eight or more individuals in each of twenty different weeks of 1936. It is sufficient if it employed eight individuals in each of twenty different weeks within the preceding calendar year, if it continues to be the employer of one or more persons during 1936. To determine the status of an employing unit, in ascertaining whether it is liable for the tax, the commission is empowered to examine its status as an employer not only during 1936 but during 1935 as well."

What our State act denominates as *contributions*, the Federal act (42 U. S. C. A., Sec. 1101) calls an *excise tax*. Under the Federal act (42 U. S. C. A., Sec. 1105, subdivision (b)) the employer is required to make return of the tax "not later than January 31, next following the close of the taxable year." The definition of *employer* under the Federal act appears, supra.

42 U. S. C. A., Sec. 1101 provides: "On and after January 1, 1936, every employer (as defined in section 1107 of this chapter) shall pay for each calendar year an excise tax, with respect to having individuals in his employ, equal to the following percentages of the total wages (as defined in section 1107 of this chapter) payable by him (regardless of the time of payment) with respect to employment (as defined in section 1107 of this chapter) during such calendar year: (1) With respect to employment during the calendar year 1936 the rate shall be 1 per centum; (2) with respect to employment during the calendar year 1937 the rate shall be 2 per centum; (3) with respect to employment after December 31, 1937, the rate shall be 3 per centum."

42 U. S. C. A., Sec. 1102 provides: "The taxpayer may credit against the tax imposed by section 1101 of this chapter the amount of contributions, with respect to employment during the taxable year

paid by him (before the date of filing his return for the taxable year) into an unemployment fund under a State law. The total credit allowed to a taxpayer under this section for all contributions paid into unemployment funds with respect to employment during such taxable year shall not exceed 90 per centum of the tax against which it is credited, and credit shall be allowed only for contributions made under the laws of States certified for the taxable year as provided in section 1103 of this chapter.''

Sec. 1103 (42 U. S. C. A.) referred to in Sec. 1102, sets out the requirements of State laws to meet approval by the Federal social security board.

Defendant contends that our unemployment compensation act ''is not an independent tax act; that it is merely an enabling act, supplemental to and governed in its scope of operation, by title nine (unemployment compensation) of the (federal) social security act.'' The point is that our unemployment compensation act is so tied into the Federal act that if an employer is not liable for the Federal excise tax in a given year, then there is no liability for contribution for that year under the State law. It is conceded, in effect, that defendant was not liable for the excise tax, for 1938, under the Federal act, because it did not have the *eight* employees as required by the Federal act. Also, as we have seen from Sec. 1102 (42 U. S. C. A.) set out, supra, an employer may credit contributions, paid under the State law, on his Federal tax up to 90 per cent. And defendant argues, to the effect, that since it was not liable under the Federal act for 1938, there could be no *crediting of state contributions,* because there was no place for such, and that in such situation there could be no liability for State contributions. In other words, defendant says that since it was not liable, in 1938, for the tax under the Federal act, it is not liable under the State act, and that such is so, regardless of what the State law may be on the question. In support of this contention defendant calls attention to Sec. 23 of the State act, which is as follows:

''If the tax imposed by Title IX of the Federal Social Security Act or any amendments thereto, or any other federal tax against which contributions under this Act may be credited shall, for any cause become inoperative, with the result that *no portion* (Italics ours) of the contributions required under this Act may be credited against such Federal tax, then this Act by virtue of that fact shall be suspended from operation.''

Beeland Wholesale Company v. Kaufman, 234 Ala. 249, 174 So. 516, ruled the constitutional validity of Alabama's unemployment compensation act. Among the many grounds upon which the validity of the act was challenged was a section similar to Sec. 23, supra. In ruling the point the Alabama Supreme Court said (174 So. l. c. 525):

''The Alabama act ties into it (Federal act), and forms a part

of a nation-wide economic scheme provided for by the Federal act. Unless it is tied up to such a widespread program, it probably could not have the influence on economy, which is the foundation for its existence. It would be useless, perhaps, for one state to try to effect economic stability in respect to a situation which knows no state boundaries. . . . We see no reason why an Alabama statute may not be made to depend upon the validity of an existing act of Congress into which it is tied in a way necessary for it to have an effective field of beneficial operation for the public welfare. Such is, we think, the status of the Alabama act, and it cannot be stricken down on that account." [See also Howes Bros. v. Mass. Unemployment Commission (Mass.), 5 N. E. (2d) 720; Gibson Products Company et al. v. Murphy et al. (Okla.), 100 Pac. (2d) 452; Tatum v. Wheeless et al., 180 Miss. 800, 178 So. 95.]

The contingencies mentioned in Sec. 23 have not occurred, hence our State act is not suspended, but remains in force and effect.

In Carmichael et al. v. Southern Coal & Coke Company (May 24, 1937), 301 U. S. 495, 57 Sup. Ct. 868, 81 L. Ed. 1245, 109 A. L. R. 1327, the questions for decision were "whether the Unemployment Compensation Act of Alabama infringes the due process and equal protection clauses of the Fourteenth Amendment, and whether it is invalid because its enactment was coerced by the social security act, and because it involves an unconstitutional surrender to the national government of the sovereign power of the state." The Alabama act was held valid on all the grounds mentioned. In the course of the opinion the court said (301 U. S. 1. c. 515):

■ "Support of the poor has long been recognized as a public purpose, see Kelly v. Pittsburgh, 104 U. S. 78, 81. We need not labor the point that expenditures for the relief of the unemployed, conditioned on unemployment alone, without proof of indigence of recipients of the benefits, is a permissible use of state funds. For the past six years the nation, unhappily, has been placed in a position to learn at first hand the nature and extent of the problem of unemployment, and to appreciate its profound influence upon the public welfare. Detailed accounts of the problem and its social and economic consequences, to be found in public reports of the expenditures and of the expenditures of relief funds, and in the studies of many observers, afford a basis for the legislative judgment. It suffices to say that they show that unemployment apparently has become a permanent incident of our industrial system; that it varies, in extent and intensity, with fluctuations in the volume of seasonal businesses and with the business cycle. It is dependent, with special and unpredictable manifestations, upon technological changes and advances in methods of manufacture, upon changing demands for manufactured products—dictated by changes in fashion or the creation of desirable substitutes, and upon the establishment

of new sources of competition. The evils of the attendant social and economic wastage permeate the entire social structure. Apart from poverty, or a less extreme impairment of the savings which afford the chief protection to the working class against old age and the hazards of illness, a matter of inestimable consequence to society as a whole, and apart from the loss of purchasing power, the Legislature could have concluded that unemployment brings in its wake increase in vagrancy and crimes against property, reduction in the number of marriages, deterioration of family life, decline in the birth rate, increase in illegitimate births, impairment of the health of the unemployed and their families, and malnutrition of their children.''

And the Supreme Court of the United States, in Charles C. Stewart Machine Company v. Davies, 301 U. S. 548, 1. c. 593, 57 Sup. Ct. 883, 81 L. Ed. 1279, said: ''A credit to taxpayers for payments made to a state under a state unemployment law will be manifestly futile in the absence of some assurance that the law leading to the credit is in truth what it professes to be. An unemployment law framed in such a way that the unemployed who look to it will be deprived of reasonable protection is one in name and nothing more. What is basic and essential may be assured by suitable conditions. The terms embodied in these sections are directed to that end. A wide range of judgment is given to the several states as to the particular type of statute to be spread upon their books. For anything to the contrary in the provisions of this act they may use the pooled unemployment form, which is in effect with variations in Alabama, California, Michigan, New York, and elsewhere. They may establish a system of merit ratings applicable at once or to go into effect later on the basis of subsequent experience. [Cf. Secs. 909, 910.] They may provide for employee contributions as in Alabama and California, or put the entire burden upon the employer as in New York. They may choose a system of unemployment reserve accounts by which an employer is permitted after his reserve has accumulated to contribute at a reduced rate or even not at all. This is the system which had its origin in Wisconsin. *What they may not do, if they would earn the credit, is to depart from those standards which in* the judgment of Congress are to be ranked as fundamental.'' (Italics ours.)

So it would appear that the validity of our unemployment compensation act is in no sense dependent upon its conformity to the Federal act. If we fail to meet the standards set by the Federal act, the taxpayer, under the Federal act, is denied the credit now provided.

Subdivision (b) of Sec. 7 (here repeated in part for convenience) provides: ''(b)  Except as otherwise provided in subsection (c) (not here involved) of this section, an employing unit shall cease to be an employer subject to this act as of the first day of January of

any calendar year, if it files with the commission, prior to the fifth day of January of such year, a written application for termination of coverage, and the commission finds that there were no thirteen different days, each day being in a different week *within the preceding calendar year* (Italics ours), within which such employing unit employed eight or more individuals in employment subject to this act." Defendant was under the act in 1937, because it had eight or more employees for the required time, *each* of *twenty* different weeks, as provided in paragraph (h) of Sec. 3, supra. Such being so, there is no escape from the conclusion that defendant, by virtue of subdivision (b), supra, was under the act in 1938, and we so rule.

Reaching this conclusion, it follows that the judgment should be affirmed, and it is so ordered. *Hyde* and *Dalton, CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.