## WITHERSPOON OIL CO. v. STATE.

### No. 3913.

Court of Civil Appeals of Texas. Beaumont.

Nov. 6, 1941.

Rehearing Denied Dec. 10, 1941.

Jesse I. Edwards, of San Antonio, for appellant.

Gerald C. Mann, Atty. Gen., Morris Hodges and Lee Shoptaw, Asst. Attys. Gen., and Lee G. Williams, of Austin, for appellee.

COMBS, Justice.

The majority do not concur in that part of the opinion prepared by Mr. Chief Justice WALKER wherein it is held that appellant's failure to file written application for termination of coverage rendered it liable for the unemployment compensation tax for the year 1939.

We all agree that appellant on the record was liable for the tax for the years 1936 and 1937, by reason of the fact that appellant and C. L. Witherspoon should be treated as a single taxing unit, and said unit had enough employees during said two years to make it liable for the tax. Also, on our construction of the statute, it was liable for the tax for the year 1938 by reason of the fact that it was covered by the Act of the preceding year, Sec. 17(f) (1). But on the undisputed facts it was not liable for the tax for the year 1939 unless it was rendered liable by the mere fact that it failed to file written application for termination of coverage, as provided by the Unemployment Compensation Act, Art. 5221b—6(c). The provision is quoted in the opinion of Chief Justice WALKER and need not be repeated here.

It is our view that on the record before us the provision should not be given the effect of rendering the appellant liable for the tax.

As pointed out by Chief Justice WALKER, the requirement for written application for the termination of coverage is to aid the Commission in administering the Unemployment Compensation Law by requiring an employer subject to the Act to make such application and have his status determined before being relieved from coverage in order that the records of the Commission may at all times correctly reflect those who are subject to the provisions of the Act. To our minds, this provision has application only where the status of the applicant is that of an employer subject to the Act, as reflected by the records of the Commission. There are other provisions of the statute which prescribe penalties for failure of an employer subject to the Act to make proper reports to the Commission. See, Art. 5221b —12(c) (d) (f) (g) and (k). The provision here in question is penal in nature and imposes the tax in the form of a penalty for the failure of the employer to report his change of status, when he ceases to have the number of employees which render him subject to the Act. In the present case the status of the appellant was, upon the records of the Commission, that of an employer not covered by the Act. It had paid the tax for the year 1936, which tax was subsequently refunded to it at the suggestion of the Commission, which notified appellant that it was not covered by the Act. It was therefore unnecessary for it to file application for a termination of coverage when the very agency to which such application would be made had already notified appellant that it was not covered.

It should be noted, as pointed out by Chief Justice WALKER, that there is no suggestion of fraud on the part of appellant in submitting its report upon which the Commission based its ruling of non-coverage, or that it intentionally sought in any way to avoid any tax which might be due by it. The record is perfectly consistent with the good faith belief that it should not be considered with C. L. Witherspoon as a single unit in determining the question of coverage by the Act. Indeed, it strongly contends in the present case that it should not be so considered and even though that issue has been determined against it, the record is perfectly consistent with its good faith belief that it was not subject to the Act. Consequently, it is our view that since the records of the Commission, without any fraud or misrepresentation on the part of the appellant, reflected its status as that of non-coverage by the Act, it rested under no duty to file application for termination of coverage when the number of employees employed by the taxing unit fell below

the number which subjected it to the Act. The statute being penal in nature, it should be given a strict construction consistent with the attainment of the end sought, which is the making of written application for termination of coverage by employers who are classed by the records of the Commission as being subject to the provision of the Act. It would be wholly unjust in this case to inflict the penalty upon the appellant when its status upon the records of the Commission was that of non-coverage. It would be to penalize it for failure to make application for a change of status, which it was justified in assuming needed no changing.

It follows that the judgment of the trial court should be reformed by striking therefrom the item of $57.58 for Unemployment Compensation tax for the year 1939, and that as so reformed the judgment should be affirmed.

Reformed and affirmed.

WALKER, Chief Justice (dissenting in part).

This is an action by the State of Texas, appellee, against appellant, Witherspoon Oil Company, for taxes claimed by appellee under the Texas Unemployment Compensation Act, Vernon's Ann.Civ.Statutes, Articles 5221b—1 to 5221b—22, being Acts of 1936, 44th Leg., 3rd C.S., page 1993, Chapter 482, as amended by Acts of 1937, 45th Leg., p. 121, Chapter 67, for the years 1936, 1937, 1938, 1939, in the amount of $320.10, together with interest and penalties, under the provisions of the Act. Appellant answered by general and special exceptions, challenging the constitutionality of the pertinent provisions of the Act, and by general and special denials, and by certain special pleas. On trial to the court without a jury, judgment was for appellee for the relief prayed for, from which appellant prosecuted its appeal to the Austin Court of Civil Appeals. The case is on our docket by order of transfer by the Supreme Court.

In support of its judgment, the trial court filed the following conclusions of fact and law:

"Findings of Fact

"1. Defendant corporation and C. L. Witherspoon were, during the calendar years 1936 through 1939, engaged in the oil business.

"2. During the calendar years 1936 and 1937 defendant corporation and C. L. Witherspoon, if treated as a single unit, had in employment eight or more individuals for some portion of a day in each of twenty different weeks.

"3. C. L. Witherspoon, during the calendar year 1936 and until June 11, 1937, owned his individual business and owned 155 shares of a total of 250 shares outstanding of the voting stock of defendant corporation.

"4. Defendant corporation did not file with the Texas Unemployment Compensation Commission a written application for termination of coverage, in accordance with Article 5221b, Vernon's Revised Civil Statutes, 1925.

"5. Contributions or taxes on wages payable by defendant during the calendar years 1936 through 1939 amount to $320.10."

"Additional Findings of Fact

"1. That since January 1, 1936, the defendant has never had in its employ as many as eight or more employees.

"2. That C. L. Witherspoon ceased to own a majority of voting stock of the defendant corporation on June 11, 1937.

"4. That under date of December 31, 1937, the defendant submitted a report on a form prepared by the Texas Unemployment Compensation Commission and entitled 'Report of Status.'

"5. That on the basis of the above mentioned report, defendant was advised by the Texas Unemployment Compensation Commission that it was not subject to the Texas Unemployment Compensation Act and requested defendant to file application for a refund of taxes paid.

"6. That on January 12, 1938, defendant made application on a form furnished by Texas Unemployment Compensation Commission for a refund, and thereafter, on February 12, 1938, Texas Unemployment Compensation Commission refunded the amount of taxes theretofore paid by the defendant.

"7. That there was no regulation promulgated by the Texas Unemployment Compensation Commission for termination of coverage until September 5, 1939."

"Conclusions of Law

"1. Defendant during the period January 1, 1936 to June 11, 1936, was an employing unit which, together with C. L.

Witherspoon, another employing unit, was controlled, by legally enforceable means or otherwise, directly or indirectly by the same interest, and which, if treated as a single unit with C. L. Witherspoon, would be an employing unit which for some portion of a day in each of twenty different weeks within the calendar years 1936 and 1937, had in employment eight or more individuals.

"2. Defendant during the period June 11, 1937 through December 31, 1939, was an employing unit which, having become an employer under Paragraph 4 of Article 5221b—17(f), had not, under Article 5221b—6 ceased to be an employer subject to Texas Unemployment Compensation Act.

"3. Defendant was an employer during the calendar years 1936, 1937, 1938 and 1939, and is liable to plaintiff for unemployment contributions in the amount of $320.-10."

The court's judgment against appellant for the taxes, interest and penalties sued for invokes the application to the facts of this case of the following Sections of Art. 5221b, V.A.T.C.S.:

Sec. 17(f) (1): "Any employing unit which for some portion of a day but not necessarily simultaneously, in each of twenty (20) different weeks, whether or not such weeks are or were consecutive, within either the current or the preceding calendar year, has or had in employment eight (8) or more individuals (irrespective of whether the same individuals are or were employed in each such day)";

Sec. 17(f) (4): "Any employing unit which together with one or more other employing units, is owned or controlled (by legally enforceable means or otherwise) directly or indirectly by the same interest, or which owns or controls one or more other employing units (by legally enforceable means or otherwise), and which, if treated as a single unit with such employing unit, would be an employer under paragraph (1) of this subsection";

Sec. 6(c): "An employing unit shall cease to be an employer subject to this Act only as of the 1st day of January of any calendar year, if it files with the Commission, prior to the 31st day of March of such year, a written application for termination of coverage, and the Commission finds that there were no twenty (20) different days, each day being in a different week within

the preceding calendar year, within which such employing unit employed eight (8) or more individuals in employment subject to this Act. For the purposes of this subsection the two or more employing units mentioned in paragraph (2) or (3) or (4) of section 19(f) shall be treated as a single employing unit."

Appellee made no contention that appellant during 1936, or in the other taxing years in issue, on the basis of the number of its own employees, was an employer under the provisions of Sec. 17(f) (1), supra. But appellee contends that appellant was owned and controlled by C. L. Witherspoon, by legally enforceable means or otherwise, and that, therefore, appellant and Witherspoon constituted a single employing unit under the provisions of Sec. 17(f) (4), and that under this unified control appellant and Witherspoon had the number of employees required by Sec. 17(f) (1), supra, to make them a single employing unit, and that as a single employing unit, they were subject to the payment of the taxes prescribed by the Act. Appellee sued for the taxes for the years 1937, 1938 and 1939 on the ground that appellant had not filed with the Texas Unemployment Commission the application for the termination of coverage, as provided by Sec. 6(c), supra.

The court found that C. L. Witherspoon owned 155 shares of the total of 250 shares of appellant's stock. Appellant asserts that Sec. 17(f) (4), supra, is unconstitutional as being in violation of Art. 1, Sec. 3, of the Constitution of the State of Texas, Vernon's Ann.St. (the equal protection clause), Art. 1, Sec. 19 of our State Constitution (the due course of law provision), Art. 8, Sec. 1, of our State Constitution, providing that "taxation shall be equal and uniform * * *", and Sec. 1 of the 14th Amendment of the Constitution of the United States. Appellant contends that this section of the Act is in violation of the cited provisions of the state and federal Constitutions, for the reason that it makes appellant liable to pay the taxes on the ground that C. L. Witherspoon, the owner of the majority of appellant's stock, was an employer "while not subjecting competing corporations having the same number of employees in which the owner of a majority of the voting stock is not individually also an employer to the same tax." The answer to this proposition is that appellant has not correctly

construed Sec. 17(f) (4). As against appellant's proposition, this section makes an employing unit subject to the tax, when not within the provisions of Sec. 17(f) (1), only when it "is owned or controlled (by legally enforceable means or otherwise) directly or indirectly by the same interest." Appellant's proposition is one of law on the face and reading of this section, while appellee by its pleading and evidence did not rely solely upon stock ownership as a basis for the application of the "control" provisions of this section to appellant. As supporting appellee's theory of its case, we make the following brief summary of the evidence on this issue: Appellant and C. L. Witherspoon were engaged in the oil business in 1936. As a single employing unit, they had the required number of persons in their employment to come within the definition of "employer" as made in Sec. 17(f) (1). C. L. Witherspoon owned his individual business and a majority of appellant's voting stock; in fact all of appellant's stock was held by the Witherspoon family except two shares out of the total of 250 shares. C. L. Witherspoon was appellant's president, and from the date of its charter in 1917, and prior to June 11, 1937, he owned a majority of the stock of the appellant corporation. Appellant and C. L. Witherspoon operated their business in the same office, in the same building, known as the Witherspoon building. C. L. Witherspoon, Jr., was vice-president. He and all of appellant's other employees performed services for C. L. Witherspoon during 1936 in his individual business. C. L. Witherspoon, Jr., the vice-president, testified that when C. L. Witherspoon, in his individual capacity, had anything that he wanted the vice-president to do for him, he did it.

We give appellant's fourth proposition: "The Court should not have overruled Appellant's Special Exception 11 C, because the Federal Social Security Act [42 U.S. C.A. §.301 et seq.], does not require any application to terminate coverage and the Texas Unemployment Compensation Act was passed to comply with the Federal Act and in order to administer the Federal Act in Texas, and for that reason Appellant's Special Exception 11 C should have been sustained." Appellant cites no authority supporting this proposition. Our Act is a state statute, complete within itself. Denying appellant's point, the Supreme Court of Missouri, in Murphy v. Hurlbut Undertaking & Embalming Co., 346 Mo. 405, 142 S.W. 2d 449, 454, said: "So it would appear that the validity of our unemployment compensation act is in no sense dependent upon its conformity to the federal act. If we fail to meet the standards set by the federal act, the taxpayer, under the federal act, is denied the credit now provided."

Appellant assigns error against the court's first conclusion of law that it was controlled by C. L. Witherspoon "for the reason that there is no finding of fact by the Court upon which such conclusion of law could be reached." Appellant excepted to the court's conclusions of fact and law only in the general language, "Now comes the defendant, Witherspoon Oil Company, in the above entitled and numbered cause, by its attorney of record, and objects and excepts to the original findings of fact and conclusions of law filed herein on January 3, 1941." No specific exception to the conclusions were made or filed. Appellant followed its general exception with a request for certain specific conclusions of fact and law, but no request was made by appellant for a finding on the issue of "control." We have given above a summary of the evidence supporting the court's conclusion that appellant was controlled by C. L. Witherspoon. On authority of Umscheid v. Scholz, 84 Tex. 265, 16 S.W. 1065, the Supreme Court did not err in making and filing its conclusion of law without a supporting conclusion of fact, in the absence of a request by appellant for a specific finding on that issue, or an exception directing the court's attention to the omission.

By propositions 6 and 8, appellant makes the point that the evidence did not raise against it the issue of joint control between it and C. L. Witherspoon. The statement made above denies this point.

On the ground that the Act did not become effective until October, 1936, appellant contends that it is unconstitutional in that it is a retroactive law imposing taxes against it from January 1, 1936, to the effective date of the Act, in violation of Sec. 16, Art. 1, of our State Constitution: "No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made."

The following proposition by our Supreme Court in Friedman v. American Surety Co. of New York, 151 S.W.2d 570, 577, denies this contention: "Section 16 of Article I of our Constitution provides that

no bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made. We can see nothing in this Act that even remotely violates this constitutional provision."

On the court's findings on the issue of "unified control", as defined by Sec. 17 (f) (4), appellant was liable for the taxes as an employer under Sec. 17 (f) (1) for the years 1936 and 1937. Being liable for the taxes for 1937, appellant was liable for the taxes for the year 1938 under the provisions of Sec. 17 (f) (1), making the employer liable for taxes for the current year when liable for the preceding year. Murphy v. Hurlbut Undertaking & Embalming Co., 346 Mo. 405, 142 S.W.2d 449; Southern Phot & Blue Print Co. v. Gore, 173 Tenn. 69, 114 S.W.2d 796.

As we understand appellant's brief, it attacks the constitutionality of Sec. 6 (c), supra, on the ground that it "is obviously unreasonable, arbitrary and discriminatory in that it would impose the tax on one employing unit having fewer than eight persons in their employ, but that had at one time eight or more employees, while not imposing the tax on its competitor who at all times had fewer than eight persons in their employ." No article of the Constitution, state or federal, is brought forward by appellant under this proposition, but from its argument we assume that it is invoking Art. 8, Sec. 1, of our State Constitution, and the due process clauses of the state and federal Constitutions. On this point, appellee plead: "Defendant was during each of the calendar months of the years 1936, 1937, 1938 and 1939, an employing unit which, having become an employer by virtue of the facts set out above did not cease to be such employer subject to the Texas Unemployment Compensation Act on the first day of January of any calendar year after the calendar year 1936, because defendant did not file with the Texas Unemployment Compensation Commission, prior to the 5th day of January of the calendar year 1937, 1938 or 1939, a written application for termination of coverage in accordance with Subsection 8(b) of the Act, being Article 5221—6 (b) Vernon's Revised Civil Statutes, 1925, prior to its amendment on April 1, 1939." When an employer once becomes liable for the taxes, under the provisions of Sec. 6(c), supra, it can escape liability for future taxes only by filing the application for the termination of its coverage, at the time and in the manner required by this section. This duty,

imposed upon an employer, who has once become liable for the tax, is not an undue burden against him, as against an employer who has not paid the tax. In the administration of the Act it is necessary for the Commission to have accurate data as to the beneficiaries of the Act, and that data can be had only if the Commission has accurate data as to the number and names of the employers. When an employer has once become subject to the tax, it is necessary for the Commission to have data before it by which it can strike off the name of an employer, if and when, on the conditions of the Act, it ceases to be liable for the tax. So, Sec. 6(c) is nothing more than a simple remedial provision by which this information can be given the Commission. That the classification of employers made by Sec. 6(c) is constitutional is clearly supported by the following proposition from the decision of our Supreme Court in Friedman v. American Surety Co. of New York, 151 S.W.2d 570, 577: "Our Constitution does not forbid legislative classification of subjects and persons for the purpose of regulatory legislation, but it does require that the classification be not arbitrary or unreasonable. Classifications must be based on a real and substantial difference, having relation to the subject of particular enactment. If there is a reasonable ground for the classification, and the law operates equally on all within the same class, it will be held valid. 9 Tex.Jur., p. 558, § 120." .

If the constitutionality of Sec. 6(c), supra, be conceded, then appellant contends that, on the facts of this case, it complied substantially with the requirements of this section, requiring it to file "a written application for termination of coverage," and, therefore, the court erred in rendering judgment against it on authority of this section. The facts on this issue are as follows: On the 31st day of December, 1937, appellant filed with the Texas Unemployment Compensation Commission, a Report of Status giving the Commission the following information: (1) Appellant's name and address; (2) the names of appellant's principal officers; (3) the nature of appellant's business; (4) a statement that the appellant was not owned or controlled by another employing unit (this report was filed under date of December 31, 1937. C. L. Witherspoon's majority of ownership of its stock ceased June 11, 1937); (5) a statement that appellant did not own or control another employing unit; (6) number of employees

(a) at the time of the report, (b) for preceding year (1936); and (7) a chart showing by weeks the total number of employees for the year 1937. After this Report of Status was filed with the Commission, Mr. Jack Howison wrote in the name of the Commission the following letter:

"Orville S. Carpenter (State Seal) "Chairman and Executive "Director.

Please address all correspondence to the Commission and refer to

"The State of Texas
"Patrick D. Moreland    File No. ——
"C. R. Miller
"Commissioners
    "Texas Unemployment Compensation Commission
        "Austin, Texas
            "January 4, 1938
"Witherspoon Oil Company
    "P. O. Box 176
    "San Antonio, Texas
        "Attention: Mr. H. F. Witherspoon
"Gentlemen:

"We are in receipt of your employers report of status for which we thank you.

"Since you have not qualified as an employer subject to the Texas Unemployment Compensation Act, you are due a refund in the amount which you have paid to this Commission.

"We are enclosing three copies of our form TUC 67, which is an application for refund. Please complete two copies of this form and return them to us.

"As soon as your application has been approved, you will be refunded in the amount of $20.01, the amount which your records indicate that you have contributed to this commission.

"Thanking you for your cooperation, we are
    "Very truly yours,
                        "Jack Howison
"J. H: llg                    Jack Howison
"Encl.                    Coverage Division."

Appellant forthwith filed with the Commission the copies of application for refund furnished it by Jack Howison, giving the Commission the following information: (a) Its name, Witherspoon Oil Company; (b) it had no branch offices; (c) wages paid by it for January, 1937, $383.62, taxes

$6.91; wages, February and March, 1937, $727.53, taxes $13.10, each of these wage statements was followed by the statement, "not qualified—refund due"; (d) answering the statement that "such remittances were made in error due to following reasons," appellant gave the answer, "not qualified"; (e) in the application appellant made the following statement, "and that due to the fact the remittances were made in error, he is now making claim for refund in the amount of $20.01 as explained above." This application was verified on the 21th day of January, 1938, and was approved on February 8, 1938, by the following order printed on the application: "In connection with the above claim, the Commission finds that the above contributions were erroneously paid, and the adjustment thereof can not conveniently be made in connection with subsequent contributions. A refund of said sum of $20.01 is approved for payment out of the clearance account of the Unemployment Compensation Fund, this —— day of FEB 8, 1938."

The facts as summarized do not constitute a substantial compliance with the provisions of Sec. 6(c), supra, that is, they do not constitute an application for termination of coverage. It is not contended that appellant ever filed an application for termination of coverage, which by the express provisions of this section is the "only" way by which coverage can be terminated. Under the provisions of this section, when the application for termination of coverage is filed, the Commission, in support of the application, must find that the applicant was not an employer under Sec. 17(f) (1), or under the unified control provisions of Sec. 17(f) (4); that is to say, the Commission can terminate the coverage only after an investigation and an express finding. Appellant, in its Report of Status, made no reference to the year 1936, and made an erroneous statement of the facts upon which the court found against it on the issue of unified control. No issue of fraud is suggested against appellant in making this report; it simply ignored the fact that it and Mr. Witherspoon, during the years 1936 and 1937, constituted a single employing unit. The Commission, in suggesting the refund and in forwarding to appellant the application on that issue, and in making the refund, acted only on the data given it by appellant. Clearly, the facts do not constitute a substantial compliance with Sec. 6(c). Since

the statements made in the Report of Status were not true, appellant cannot urge against appellee the issue of estoppel.

I prepared this opinion for the court, but my brethern are not in agreement with me on the conclusion that appellant is liable for the tax for the year 1939. In a separate opinion prepared by Mr. Justice COMBS they give their reasons for this conclusion, from which I most respectfully dissent. On all other points the court is in agreement.

On the order of my brethern, as stated in their opinion, the judgment of the lower court is reformed in the particulars stated by them, and as reformed affirmed.

Reformed and affirmed.