Joseph COHEN, Appellant,

v.

STATE of Texas et al., Appellees.

No. 10609.

Court of Civil Appeals of Texas.

Austin.

Feb. 4, 1959.

Rehearing Denied March 4, 1959.

David C. McCord, Dallas, for appellant.

Will Wilson, Atty. Gen., Sam Lane, Asst. Atty. Gen., for appellees.

GRAY, Justice.

This appeal is from a judgment for unemployment compensation taxes, penalties and interest alleged to be due by appellant for the years 1954, 1955 and the first and second quarters of the year 1956 under the terms and provisions of the Unemployment Compensation Act, Art. 5221b, Vernon's Ann.Civ.St.

The facts are undisputed and only questions of law are presented.

Appellant became an employer subject to the Act in 1945. In 1946 he was adjudged to be a bankrupt and as such was discharged. All employment compensation taxes due for the years 1945 and 1946 were paid through the bankruptcy proceedings.

Appellant ceased doing business in 1946 and thereafter did not have any employees until January 1, 1954 and then he did not have eight or more employees in any twenty weeks during either of the years 1954, 1955 or 1956. An employee of the Commission testified:

"A. My records show that he ceased business and went through bankruptcy in 1946. He discontinued business on September 7, 1946, and our record show further that he had no employees from September 7, 1946, until January 1st, 1954."

and further testified that:

"* * * each of these periods that we are suing for taxes and penalties on is represented by a quarterly contribution and wage report. The number of employees shown per quarter on these reports show that he did not have eight or more employees in twenty weeks in either '54, '55, '56."

Appellant's own witness testified that during 1954, 1955 and 1956 appellant never had more than four employees.

Appellant did not file an application for termination of his coverage under the Act during the period of time in question, however his account was terminated, by application, as of January 1, 1957. This suit was filed February 1, 1957.

Prior to its amendment in 1955, Sec. 17 (f) of the Act defined an employer as:

"Any employing unit which for some portion of a day but not necessarily simultaneously, in each of twenty (20) different weeks, whether or not such weeks are or were consecutive within either the current or the preceding calendar year has or had in employment eight (8) or more individuals * * *"

and further by Sec. 17(f) (5) as: such employing unit which having become an employer has not, under the Act, ceased to be an employer.

Sec. 6(c) of the Act provided:

"An employing unit shall cease to be an employer subject to this Act only as of the 1st day of January of any calendar year, if it files with the Commission, on or before the 31st day of March of such year, a written application for termination of coverage, and the Commission finds that there were no twenty (20) different days, each day being in a different week within the preceding calendar year, within which such employing unit employed eight (8) or more individuals in employment subject to this Act."

In 1955 the 54th Legislature, Acts 1954, 54th Leg. p. 399, Ch. 116, amended, with others, the above quoted sections of the Act respectively as follows:

" 'Employer' means:

"(1) Any employing unit which for some portion of each of twenty (20) different days within the current or preceding calendar year, each day being in a different calendar week, whether or not such weeks are or were consecutive, has or had in employment four (4) or more individuals, but not necessarily simultaneously, (irrespective of whether the same individuals are or were employed in each such day); provided however, that during the calendar year 1956 'employer' means any employing unit which for some portion of each of twenty (20) different days within the last two (2) calendar quarters of the calendar year 1955, or within the entire calendar year 1956, each day being in a different calendar week, whether or not such weeks are or were consecutive, has or had in employment four (4) or more individuals, * * *" [1]

"(c) (1) Except as provided in paragraph (2) immediately below, no employing unit shall cease to be an employer subject to this Act except as of the first day of January of any calendar year, and only then if it files with the Commission, within the period from January 1 through March 31 of such year, a written application for termination of coverage, and the Commission finds that there were no twenty (20) different days within the preceding calendar year, each day being in a different calendar week, during each of which days such employing unit employed four (4) or more individuals in employment subject to this Act. For the purposes of this subsection the two or more employing units mentioned in paragraph (2) or (3) of subsection 19(f) shall be treated as a single employing unit.

"(2) Regardless of whether or not an application for termination of coverage has been filed, an employing unit shall cease to be an employer subject to this Act as of the first day of January of any year after December 31, 1955, if the employing unit has not had any individuals in employment on any one or more days within the three immediately preceding consecutive calendar years and the Commission so finds."

The above amendments were approved April 28, 1955 as being effective on that date. P. 412, Acts 1955, supra. Sections 7(a) and 14(b) of this amendment provide:

"Payment: Contributions shall accrue and become payable by each employer for each calendar year, or portion thereof, in which he is subject to this Act, with respect to wages for employment paid during such calendar year, or portion thereof. Such contributions shall become due and be paid by each employer to the Commission for the fund in accordance with such regulations as the Commission may prescribe, and shall not be deducted in whole or in part from the wages of individuals in such employer's employ."

"Collections: If, after due notice, any employer defaults in any payment of contributions, penalties or interest thereon, the amount due shall be collected by civil action in the name of the State and the Attorney General, and the employer adjudged in default shall pay the costs of such action; provided, however, that no Court action shall be begun to collect contributions or penalties from an employer after the expiration of three (3) years from the due date of such contributions, except that, in any case of a willful attempt in any manner to evade any of the provisions of the Unemploy-

---

[1]. The above section was amended in 1957 but the number of employees was not changed. Acts 1957, 55th Leg., Regular Session, p. 1350, Ch. 460, p. 1358.

ment Compensation Law or Commission rules and regulations promulgated thereunder, such action may be begun at any time."

Appellant here complains, in effect, that the trial court erred in refusing to hold that notice to the Commission of the bankruptcy proceedings was notice of the termination of his business, that it was a sufficient notice to terminate his coverage under the Act, and that the judgment is contrary to the undisputed evidence.

We will first notice appellant's status as an employer subject to the Act prior to the Amendment of 1955.

The record before us shows that the Commission was in possession of information sufficient and necessary to support, if not compel, a finding that appellant had not during any preceding calendar year (subsequent to 1946) employed eight or more individuals on any twenty different days. Indeed the Commission's own records, from which its employee testified, showed that appellant ceased to do business in 1946, that thereafter he did not employ any person until 1954 and then that he employed less than eight. Thus the Commission kept a complete record of appellant's status as an employer.

Unquestionably and admittedly the records of the Commission showed that appellant ceased to do business in 1946, that all taxes due by him up to that time were collected, and that thereafter he never employed a sufficient number of persons to make him subject to the Act. These facts being shown by the records of the Commission then an application by appellant to have his coverage terminated together with a full inquiry by the Commission as to appellant's status would have disclosed only the facts already in its possession and reflected by its records.

The only ground urged for holding appellant liable is his failure to file an application for termination of his coverage.

In Witherspoon Oil Co. v. State, Tex. Civ.App., 156 S.W.2d 579, 580, Er. ref., w. m., the court considered a question similar to the question here presented. There Sec. 17(f) and Sec. 6(c) quoted supra were invoked to show liability against the appellant who had failed to file an application for termination of his coverage under Sec. 6(c) supra. In holding that the section did not have the effect of rendering the appellant liable for the tax the court said:

"* * * the requirement for written application for the termination of coverage is to aid the Commission in administering the Unemployment Compensation Law by requiring an employer subject to the Act to make such application and have his status determined before being relieved from coverage in order that the records of the Commission may at all times correctly reflect those who are subject to the provisions of the Act. To our minds, this provision has application only where the status of the applicant is that of an employer subject to the Act, as reflected by the records of the Commission. There are other provisions of the statute which prescribe penalties for failure of an employer subject to the Act to make proper reports to the Commission. See, Art. 5221b–12(c) (d) (f) (g) and (k). The provision here in question is penal in nature and imposes the tax in the form of a penalty for the failure of the employer to report his change of status, when he ceases to have the number of employees which render him subject to the Act. In the present case the status of the appellant was, upon the records of the Commission, that of an employer not covered by the Act. It had paid the tax for the year 1936, which tax was subsequently refunded to it at the suggestion of the Commission, which notified appellant that it was not covered by the Act. It was therefore unnecessary for it to file application for

a termination of coverage when the very agency to which such application would be made had already notified appellant that it was not covered."

Here as in the case supra the records of the Commission shows the status of appellant was not that of an employer subject to the Act prior to the Amendment of 1955 and for which reason he is not liable for taxes alleged to be due prior to the effective date of the amendment nor for penalties and interest thereon.

We find it not necessary to consider the 1955 Amendment because appellees did not urge it in the trial court to show liability and do not urge it here. They present their case here on one counterpoint which is:

"The trial Court did not err in determining that the method prescribed for termination of coverage in the Texas Unemployment Compensation Act is exclusive when once the status of qualified employer attaches, and it continues until terminated in the manner provided by Article 5221b, para. 8C" [2]

Appellant asserts:

" * * * that since he did not employ the necessary number of employees during the years 1954, 1955 and 1956, he, therefore, was not qualified under the Act as an employer, * * *"

Appellees offered no proof of liability under the Act as it existed prior to the 1955 Amendment or under that Amendment and does not contest the accuracy of appellant's statement. Accordingly the judgment of the trial court is without evidence to support it.

The judgment of the trial court is reversed and judgment is here rendered that appellees take nothing by their suit.

Reversed and rendered

On Appellees' Motion For Rehearing

In their motion for rehearing appellees say that our holding is in conflict with the holdings in the following four cases: Webb v. State, Tex.Civ.App., 156 S.W.2d 557, Er. ref.; State v. Lewis, Tex.Civ.App., 218 S.W.2d 515, Er. ref.; Sharfstein v. Texas Employment Commission, Tex.Civ. App., 245 S.W.2d 545, Er. ref., n. r. e., and Harris v. State, Tex.Civ.App., 159 S.W.2d 172, no writ history.

■ A careful reading of the above cases will show that our holding here is in accord with the language used in those opinions. It will further show that the requirements in present section 6(c) for a written application for termination of coverage under the Act is construed to be for the aid of the Commission in keeping its records to correctly show who are subject to the provisions of the Act. That is to say that a written application is required to change the status of one who is shown by the records of the Commission to be subject to the Act.

A writ of error was unqualifiedly refused in the Webb case and in the Lewis case. We will first notice those holdings. The facts will not be restated further than is necessary to show similarity or lack of similarity to the facts here.

In the Webb case the court said [156 S.W.2d 558]:

"The court's judgment is predicated upon the fact finding that appellant failed to file the application for termination of coverage provided by Article 5221b–6(c): * * *

"The evidence clearly supports this fact conclusion. The only point made by appellant challenges the constitutionality of this section of the Texas Unemployment Compensation Act."

The fact conclusion was based on the findings, or rather on the agreement, that

2. Paragraph 8C is quoted supra as (C) (1) and (2), 1955 Amendment.

Webb had paid all taxes due for the year 1937, that he continued to operate his business for the years 1938 and 1939 and that he had employees for those years but did not pay taxes for either. There is no reference to any record of the Commission in the opinion. The nearest such reference is in the trial court's findings of fact as follows:

" 'It is further agreed that the defendant has not paid the unemployment compensation tax to the State of Texas for the year 1939 in any amount. Defendant denies any obligation to pay any further taxes which the plaintiff claims he owes; but it is agreed that if any sums are due for the year 1938, the same are correctly stated as to the amount in the itemized exhibit attached to plaintiffs' petition filed herein and a copy of which is hereto attached, and that, if any sums are due for the year 1939, the same are correctly stated as to amount in the said exhibit attached to said petition and a copy of which is also attached hereto. * * *' "

The exhibit is not explained. The constitutionality of the Act was upheld and the trial court's judgment was affirmed.

The Lewis case was by this court. In 1946 Lewis purchased a business from Gus Kuhen who was an "employer" under the Act. The suit was for taxes for the year 1946 and the first three quarters of 1947 with penalties and interest. The question presented was whether Lewis became an employer subject to the Act. We said [218 S.W.2d 517]:

"There is no contention that any application has been filed as provided for in this section. [6(c)] The method here prescribed for termination of liability of an employer *subject to the Act* is exclusive. Harris v. State, Tex. Civ.App., 159 S.W.2d 172. The purpose of this section is to aid the Commission in administering the Act, and it imposes a penalty on an employer *who, according to the records of the Commission, is subject to the tax,* if he fails to terminate his liability in accordance with the provisions of said Section. Witherspoon Oil Co. v. State, Tex.Civ.App., 156 S.W.2d 579, Error Ref. W.M. The term 'employing unit' as defined in Section 17(e) is inclusive of individuals." (Italics ours.)

The above language is consistent with the language of the Witherspoon case cited therein as is shown by our quotation from that case in our original opinion.

The Sharfstein case was also by this court. There Mrs. Sharfstein acquired a beauty shop under the will of the prior owner. She contended that she was entitled to the same rate experience as the former owner although she had not filed an application for transfer of such rate experience within 180 days. She sued for a refund of alleged overpayment of taxes and penalties. Our holding was that Mrs. Sharfstein acquired the business on the day of the death of the prior owner; that she did not file her application for a transfer of the experience rating of the prior owner within 180 days; that she had not complied with the Act and that the Act is constitutional. We did cite and quote from the Harris case as showing the necessity for complying with the statutory requirements of Art. 5221b, supra.

In the Harris case the court said [159 S.W.2d 173]:

" * * * a construction of the provision which would permit termination of coverage by *one appearing on the records of the Commission as an employer subject to the Act* in some other manner of 'substantial compliance' could only lead to difficulty and confusion in the administration of the Act.

"Clearly appellant did not apply for termination of his coverage. And

since his status upon the records of the Commission was that of an employer subject to the Act for the year 1937, such status continued throughout the period involved in this suit." (Italics ours.)

Our quotations from the Lewis case and the Harris cases are in accord with the Witherspoon case and with our original opinion. The Sharfstein case cites and quotes from the Harris case and does not in any manner disagree with its holding. The Webb case does not decide any issue raised by the facts here.

The Witherspoon case and the case here are the only two instances where the Commission has sued for taxes when its own records show that the alleged employer is not a subject employer.

Clearly Sec. 6(c), supra, provides a method whereby an individual may apply to the Commission for findings changing his status as an employer on the records of the Commission. If the records of the Commission already show such status as being that of an employer not subject to the Act then the application would not serve any useful purpose.

▮ If the facts here call for a construction of Sec. 6(c) supra then it must be construed strictly against the State and liberally in favor of the taxpayer. The language of the Supreme Court in Texas Unemployment Compensation Commission v. Bass, 137 Tex. 1, 151 S.W.2d 567, 570, is applicable:

"* * * this is a case involving the question as to whether or not the tax is levied in the first instance. * * where the question involved is whether the person on whom the tax is sought to be imposed comes within the statutory provision imposing the tax, the statute must be construed strictly against the taxing authority and liberally in favor of the person sought to be held. (See authorities cited by the Court of Civil Appeals.)

When we apply the above rules to this case, we are compelled to apply this statute so as to give the doubt in favor of those on whom the tax is sought to be imposed."

Appellees' motion for rehearing is overruled.

Motion overruled.